[L. A. No. 2445. In Bank.—June 5, 1911.]

WESTERN UNION TELEGRAPH COMPANY (a Corporation), Respondent, v. ED. W. HOPKINS, County Assessor of the County of Los Angeles, Appellant.

POST ROADS—LETTER-CARRIER ROUTES—CITY STREETS.—The streets of the city of Los Angeles kept up and maintained as such are letter-carrier routes established in such city for the collection and delivery of mail matter, and consequently are post roads under section 3964 of the United States Revised Statutes.

ID.—TELEGRAPH COMPANIES—FEDERAL FRANCHISE TO USE POST ROADS— USE OF CITY STREET—TAXATION OF FEDERAL FRANCHISE NOT PERMITTED.—The right conferred upon telegraph companies, by the act of Congress of July 24, 1866, to construct, maintain, and operate lines of telegraph "over and along any of the military or post roads of the United States which have been or may hereafter be declared such by act of Congress," is not limited to such military and post roads as are upon the public domain, but extends to all in the United States, including those in the various states. Under such act, a telegraph company has such rights in regard to the streets of a municipality as are granted by the act in regard to military or post roads. Such rights constitute its federal franchise, which is not assessable for taxes by the state, county, or municipality.

ID.—FEDERAL FRANCHISE SUBJECT TO RIGHT TO CHARGE FOR PORTION OF STREET EXCLUSIVELY USED.—The privilege conferred by the act of Congress of July 24, 1866, on telegraph companies to construct, maintain, and operate lines of telegraph over such post roads as are public streets or highways of a state, is subject to the right of the state to charge and receive compensation from the telegraph company for the use by it of so much of the street or highway as is exclusively devoted to its purposes.

ID.—GRANT BY STATE OF EXCLUSIVE POSSESSION—STATE FRANCHISE— ASSESSMENT AND TAXATION OF.—If the state grants to such a company the right to such exclusive possession of portions of its public highways without compensation, the company obtains thereby something not acquired by it under the act of Congress. Such right so acquired by the company is a franchise granted by the state, having for purposes of assessment a local *situs,* and being assessable in the particular city or county in which the streets so occupied are situated.

ID.—ACCEPTANCE OF STATE FRANCHISE—EXCLUSIVE OCCUPANCY OF PORTIONS OF STREET.—Where there is a valid law of the state purporting to grant such right to telegraph companies generally, the exclusive

occupancy by a company of portions of public highways for the authorized purposes is an acceptance by it of the offered franchise.

ID.—CITY STREETS ARE PUBLIC HIGHWAYS.—The term "public highways," includes streets in cities.

ID.—CONTROL OF STATE OVER CITY STREETS.—The state, in its sovereign capacity, has the original right to control all public streets and highways, and except in so far as that control is relinquished to municipalities by the state, either by provision of the. state constitution or by legislative act not inconsistent therewith, it remains with the state legislature to be exercised in any manner not prohibited by the state constitution.

ID.—STATE STATUTE GRANTING TELEGRAPH COMPANIES USE OF PUBLIC ROADS—SECTION 536 OF CIVIL CODE—EXCLUSIVE OCCUPATION OF PORTIONS OF STREETS—STATE FRANCHISE.—Section 536 of the Civil Code, as it was originally adopted in 1872, authorizing telegraph corporations to construct lines of telegraph along and upon any public road or highway, and to erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, constituted a grant to telegraph companies of rights in regard to the streets of cities, in addition to the rights given by the act of Congress, which to the extent that they were accepted and availed of by any company, constituted a franchise granted by the state and accepted by the company. This state franchise included the right to such exclusive occupation by the company of portions of the streets as is maintained for the purposes of its system, leaving nothing in that behalf to be granted by the municipality. So far as a telegraph company holds these rights, it holds them solely under and by virtue of that section of the Civil Code.

ID.—ACCEPTANCE OF FRANCHISE—MAINTENANCE AND OPERATION OF TELEGRAPH SYSTEM—CONTRACT BETWEEN COMPANY AND STATE—IMPAIRMENT OF OBLIGATION.—Assuming that section 536 of the Civil Code was a grant of the right to such use of the streets of a municipality, the maintenance and operation of such system by a telegraph company constituted an acceptance by it of the provisions of that statute, which thereby became a contract between the company and the state, secured by the constitution of the United States against impairment by any subsequent state legislation.

ID.—CONSTRUCTION PRIOR TO ADOPTION OF STATUTE—SUBSEQUENT MAINTENANCE OF EXCLUSIVE POSSESSION OF STREETS—ACCEPTANCE.—The fact that a telegraph company constructed its lines in the streets of a municipality, prior to the adoption of section 536 of the Civil Code, does not show that it never manifested any acceptance of the rights offered by the statute, and has exercised no franchise thereunder. The grant of the right to "construct" and "erect," contained in the section, necessarily implied the right to maintain, and although the construction was before the adoption of that section, the continued maintenance of exclusive possession of portions of highways without compensation was a sufficient acceptance.

ID.—GRANT OF STATE FRANCHISE CONSTITUTIONAL—REVOCATION—POLICE
POWER.—Section 536 of the Civil Code is constitutional, and oper-
ated as a grant by the state to all telegraph companies accepting the
same, of the rights therein specified. To the extent that such offer
of the state was accepted by a telegraph company by actual occu-
pation of a highway prior to any repeal, modification or suspension
of the section, no right of revocation having been reserved, such
telegraph company has vested rights subject only to the proper
exercise of the police power, that cannot be taken away by the state
or city without compensation.

ID.—STATE HAS NO RESERVED RIGHT TO REVOKE FRANCHISE—CONSTITU-
TIONAL LAW.—No right to revoke such vested rights was reserved
to the state, either under the provisions of the constitution of 1849
or of 1879, declaring that all laws passed pursuant to the section
providing for the formation of corporations may be altered from
time to time or repealed, or under the provisions of section 327 of
the Political Code, providing that a statute may be repealed at any
time except when otherwise provided therein, and that persons act-
ing thereunder are deemed to have acted in contemplation of such
power of repeal.

ID.—CONSTITUTION OF 1849—UNIFORM OPERATION OF LAW—SPECIAL
LEGISLATION.—There was nothing in the state constitution of 1849
that prohibited the granting of such rights to telegraph corporations.
The fact that the grant made by section 536 of the Civil Code
was limited to "corporations," and does not include natural persons
or partnerships, does not invalidate the grant by making it in con-
flict with section 11 of article I of that constitution, requiring that
"all laws of a general nature shall have a uniform operation." Nor
is that section violative of the provisions of the present constitution
prohibiting special legislation.

ID.—CLASSIFICATION BY LEGISLATURE—EXCLUSIVE GRANT TO CORPORA-
TIONS.—The courts may assume that good and sufficient reasons were
apparent to the legislature why the right to exclusively occupy por-
tions of the public highway for the purposes specified should be
confined to corporations organized and existing for the purpose of
doing a telegraph business, and why such corporations constitute a
class to which such a grant may properly be restricted without
violating the constitutional provisions against special legislation. So
assuming, the legislation must be upheld.

ID.—CONSTITUTIONAL REPEAL OF NON-USED FRANCHISE.—Section 6 of
article XII of the present constitution, declaring that "all existing
charters, grants, franchises, special or exclusive privileges, under
which an actual and *bona fide* organization shall not have taken
place, and business been commenced in good faith, at the time of
the adoption of this constitution, shall thereafter have no validity,"
did not operate to repeal section 536 of the Civil Code. So far as
any company had not, at the time of the adoption of that constitu-
tion, availed itself of and thus accepted the provisions of section 536

of the Civil Code, there was no "existing" grant or franchise to be annulled, and there never was any "special or exclusive" privilege given by the section.

ID.—WESTERN UNION TELEGRAPH COMPANY—FRANCHISE TO USE STREETS OF LOS ANGELES—TAXATION.—The exclusive occupation by the Western Union Telegraph Company of portions of the streets of the city of Los Angeles without liability for compensation, to the extent at least to which its system was constructed therein at the time of the adoption of section 536 of the Civil Code, and its right to such occupation free of charge by the city, are based solely on that section, and as.to such occupation and right, that section constitutes a grant in the nature of a franchise accepted by it, constituting property located within this state and assessable in the county of Los Angeles.  The taxation of this franchise is in no way taxation of its federal franchise.

APPEAL from a judgment of the Superior Court of Los Angeles County.  George H. Hutton, Judge.

The facts are stated in the opinion of the court.

J. D. Fredericks, District Attorney, and Hartley Shaw, Chief Deputy, for Appellant.

Leslie R. Hewitt, City Attorney, W. B. Mathews, and John W. Shenk, *Amici Curiæ,* for the City of Los Angeles.

J. P. Wood, City Attorney, and Wm. J. Carr, Assistant City Attorney, *Amici Curiæ,* for the City of Pasadena.

Beverly L. Hodghead, George H. Fearons, and Brown & Wells, for Respondent.

Pillsbury, Madison & Sutro, *Amici Curiæ,* for the Sunset Telephone and Telegraph Co., et al.

ANGELLOTTI, J.—The assessor of Los Angeles County levied an assessment against the plaintiff for the fiscal year ending June 30, 1908, in the sum of fifty thousand dollars, upon its "franchise granted by the state of California to use the public highways of the city of Los Angeles," fixed a tax on said assessment at the rate of taxation applicable to property as to which he was authorized to collect taxes, the same amounting to $520, and was proceeding, in accordance with

the law relative to enforcement of the tax in cases where he was authorized to collect, to seize and sell certain personal property of plaintiff in satisfaction of the tax. This action was thereupon commenced by plaintiff to enjoin him from proceeding with the collection of such tax, on the ground that said assessment and tax are void. This claim of plaintiff was sustained by the trial court, and judgment was accordingly given in favor of plaintiff. This is an appeal by defendant assessor from such judgment. The case was submitted to and decided by the trial court upon an agreed statement of facts. No question is made as to the propriety of the remedy by injunction in this case, "if in fact the assessment made against plaintiff was invalid." The question presented for our determination on this appeal is the validity of this assessment upon the agreed facts.

Plaintiff, a New York corporation, engaged in an interstate telegraph business, on June 12, 1867, duly accepted the terms and privileges, restrictions and obligations of the act of Congress approved July 24, 1866, entitled "An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal and military and other purposes." That act provides that any telegraph company accepting in writing the restrictions and obligations required by the act "shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been or may hereafter be declared such by act of Congress, and over, under, or across the navigable streams or waters of the United States; provided, that such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post roads." Plaintiff ever since its acceptance of this act has been entitled to the privileges granted thereby. In the year 1870 plaintiff first constructed its telegraph system in the city of Los Angeles, and has ever since maintained and operated it therein, repairing, reconstructing, adding thereto, and changing the location of its wires in some cases from one street to another, all as the demands of its business in said city requried. For many years last past it has continuously maintained its lines of telegraph

through, over and upon the public roads, streets, and highways, kept up and maintained as such in the county of Los Angeles, in the city of Los Angeles, in the state of California, and elsewhere throughout the United States. On the first Monday of March, 1907, it had erected and was maintaining and operating on certain streets and highways of said city, kept up and maintained as such, as a part of its general telegraph system, poles with wires strung thereon, all so placed as not to interfere with ordinary travel on said streets or highways, and also a little less than one mile of underground conduit underneath the surface of said streets. Plaintiff has never obtained or received any franchise from the city of Los Angeles for the use of any of its streets for the construction or maintenance of its telegraph system, and it has no franchise whatever for such use of the streets of the city other than its federal franchise granted by the act of Congress of July 24, 1866, and other than such franchise, if any, as it has under section 536 of the Civil Code of California. Plaintiff has never claimed to have or to have exercised any franchise under said section 536 of the Civil Code.

It is to be borne in mind that the only right or franchise here involved is the one granted by the state, if any, to use the public highways of the city of Los Angeles, the assessment being limited by its terms to that particular right, and not including the right to use public highways in the county of Los Angeles outside of said city. The franchise alleged to have been so granted was one for the construction of lines of telegraph along and upon any public road or highway by any telegraph corporation, which, like the grant made by section 19 of article XI of the constitution regarding the use of streets for water or gas-pipes, would vest only when actually accepted by the exercise of the right granted and would be assessable only in the place where such exercise is had. (*Stockton etc. Co.* v. *San Joaquin Co.*, 148 Cal. 318, [5 L. R. A. (N. S.) 174, 83 Pac. 54].)

It was erroneously stated in the opinion of Mr. Justice McFarland in *Western Union Co.* v. *Visalia*, 149 Cal. 744, [87 Pac. 1023], that section 3964 of the Revised Statutes of the United States provides that "all public roads and highways while kept up and maintained as such are declared to be post roads." That section contains no such provision, it being lim-

ited so far as public streets or roads are concerned, to certain roads during the time mail is carried thereon. The provision referred to in that opinion is in another act of Congress, and is incorrectly quoted in that the words "post routes" are used in the act instead of "post roads." (23 U. S. Stats., p. 3, [U. S. Comp. Stats. 1901, p. 2708].) It has been held that the terms are not synonymous, and that letter-carrier routes in cities were not post roads until declared such by said section 3964, although they were post routes. (*Blackhaus* v. *Gresham,* 16 Fed. 611.) Said section 3964 provides that "all letter-carrier routes established in any city or town for the collection and delivery of mail matter" shall be post roads. We think that we are warranted in assuming that the streets of the city of Los Angeles kept up · and maintained as such are letter-carrier routes established in such city for the collection and delivery of mail matter, and consequently are post roads under section 3964 of the United States Revised Statutes. (Code Civ. Proc., sec. 1875, subd. 3.) If this be so, it is unnecessary to determine the effect of the statute declaring all public roads and highways to be post routes. What we have said in this matter is called forth by the claim of defendant that as the agreed statement of facts does not state whether the streets of the city of Los Angeles occupied by plaintiff are letter-carrier routes, plaintiff has failed to show that its federal franchise granted by the act of July 24, 1866, covers such streets, a question considered material in determining whether as to the streets of the city of Los Angeles plaintiff has acquired any valuable right under section 536 of the Civil Code of this state.

It was held by the United States supreme court in the case of *Pensacola Tel. Co.* v. *Western Union Tel. Co.,* 96 U. S. 1, [24 L. Ed. 708], that the act of July 24, 1866, is not limited to such military and post roads as are upon the public domain, but extends to all in the United States, including those in the various states. It was said: "These are all within the dominion of the national government to the extent of . the national powers, and are, therefore, subject to legitimate congressional regulation." The power to make such provision as to military and post roads situated in the various states was held to be included in the powers granted to the national government to regulate commerce

among the several states and to establish post-offices and post roads. There has been no modification of these rules by any subsequent decision of that court, which, of course, is the final arbiter on such questions. It is clear, therefore, that plaintiff has under this act of Congress such rights in regard to the streets of the city of Los Angeles as are granted by the act in regard to military or post roads. Such rights constitute its federal franchise. There is no pretense that this federal franchise may be assessed for taxes by the state, county, or municipality, and the assessment here involved does not purport to include it, being confined in terms to an alleged franchise granted by the state of California.

The claim of grant of franchise by the state is based solely on section 536 of the Civil Code. That section as originally adopted in 1872 was as follows: "Telegraph corporations may construct lines of telegraph along and upon any public road or highway, along or across any of the waters or lands within this state, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters." A very similar provision was to be found in our laws relating to telegraph companies or associations organized under the laws of the state of California for many years prior to the adoption of the code. (See Stats. 1850, p. 369, and Stats. 1857, p. 171.) This section has never been expressly repealed or amended in any particular except by expressly extending the privileges therein granted to telephone corporations, which was done in the year 1905 by a repeal of the section and its re-enactment by the same act in such a form as to expressly include telephone corporations. The ultimate question in this case is whether this section grants any right to plaintiff in regard to the streets of the city of Los Angeles in addition to the rights therein granted by the act of Congress, which right so granted by the section has been accepted and is being exercised by plaintiff. If this question be answered in the affirmative, it is clear that plaintiff has under the section a right in the streets of the city of Los Angeles, in the nature of a franchise, granted by the state, constituting property assessable as other property in the place where it is situated. (*Stockton Gas etc. Co.* v.

*San Joaquin Co.,* 148 Cal. 318, [5 L. R. A. (N. S.) 174, 83 Pac.
54]. If, on the other hand, this question is answered in the
negative, it appears necessarily to follow that plaintiff has
no franchise granted by the state. The question of the effect
of section 536 of the Civil Code with relation to telegraph cor-
porations operating under the provisions of this act of Con-
gress has never been determined by this court, except in so
far as it was determined in *Western Union Tel. Co.* v. *Visalia,*
149 Cal. 744, [87 Pac. 1023]. In *San Francisco* v. *Western
Union Tel. Co.,* 96 Cal. 140, [17 L. R. A. 301, 31 Pac. 10], it
was assumed that the assessment was on the federal franchise,
and it was one of the things taken as granted that the com-
pany "has derived no franchise from the state of California."
In *Western Union Tel. Co.* v. *Visalia,* 149 Cal. 744, [87 Pac.
1023], the assessment was on "a franchise granted by the city
of Visalia." The company had erected and was using its lines
of poles and wires through what were afterwards streets of
the city of Visalia before the city was incorporated, and had
ever since used the same. The city of Visalia in the year 1892
purported to grant to the company by ordinance the right
to use its streets for its poles and wires. The city was then
existing under a special act of the legislature which made sec-
tions 4354 to 4456 of the Political Code a part of the charter.
(Stats. 1873-4, p. 171.) The majority opinion (p. 751) held
that in so far as the ordinance of Visalia purported to grant
any rights, it merely attempted to give to plaintiff that which
it already had and was of no legal effect whatever. It was
not expressly decided by that opinion what was the source of
the company's rights in that regard, the Federal Act or the
state law. The opinion of Justice McFarland, concurred in
by Justice Lorigan, did say that the company had the right
to operate a telegraph line alone the streets of the city "not
only from the act of Congress above referred to, but also from
section 536 of our Civil Code," but there was no expression
of opinion therein as to whether said section 536 granted any
rights that were not already possessed by the company under
the act of Congress. The case, however, did necessarily decide
that in view of the act of Congress and section 536 of the Civil
Code, the right of the company to use the streets of a city
organized and existing under the general laws of the state
relating to municipal corporations contained in section 4354

to 4456 of the Political Code, *where it had established its system therein prior to the incorporation of the city,* existed independently of any grant by the city, and that the city could not add to its right in that behalf. It also necessarily decided that if there was anything enjoyed by the company that was not covered by the act of Congress, its rights in that behalf were derived from section 536 of the Civil Code.

The question of the extent and character of the rights granted by the Federal Act is, of course, exclusively a federal question, upon which the decisions of the United States supreme court are necessarily final. There is apparently considerable difference in the views of learned counsel appearing in this case, and also in the views of different judges, both federal and state, as to the effect of various decisions of the United States supreme court touching this question. But we think there can reasonably be no difference of opinion as to the meaning of those decisions so far as all questions necessary to the determination of this case are concerned. It was clearly and definitely established by the decision of that court in *St. Louis* v. *Western Union Tel. Co.,* 148 U. S. 92, [13 Sup. Ct. 485, 37 L. Ed. 380], that the privilege conferred by the act of July 24, 1866, on telegraph companies to construct, maintain, and operate lines of telegraph over such post roads as are public streets or highways of a state, is subject to the right of the state to charge and receive compensation from the telegraph company for the use by it of so much of the street or highway as is exclusively devoted to its purposes. That case involved the validity of a charge imposed by the city of St. Louis, held to represent the state, upon telegraph companies, for the privilege of using the streets of the city of a certain amount per annum for each pole erected or used by them in such streets, and the right to impose such a charge, held to be in the nature of rental for the use of property belonging to the city, was upheld. The court having considered the nature of the use made by the company, showing that such use differed from that of the general public, which was temporary and shifting, in that it is "in respect to so much of the space as it occupies with its poles, permanent and exclusive," effectually and permanently dispossessing the general public as if it had destroyed that amount of ground, proceeded to consider the claim of the telegraph company that, by reason

of the provisions of the act of July 24, 1866, it had the right to so occupy the streets with its poles free of charge on the part of the state or city. Upon this point the court, after declaring that it is a misconception to suppose that the franchise or privilege granted by the act of 1866 carries with it the unrestricted right to appropriate the public property of a state, and that a grant from one government cannot abridge any property rights of a public character created by the authority of another sovereignty, said:

"No one would suppose that a franchise from the federal government to a corporation, state or national, to construct interstate roads or lines of travel, transportation or communication, would authorize it to enter upon the private property of an individual, and appropriate it without compensation. No matter how broad and comprehensive might be the terms in which the franchise was granted, it would be confessedly subordinate to the right of the individual not to be deprived of his property without just compensation. And the principle is the same when, under the grant of a franchise from the national government, a corporation assumes to enter upon property of a public nature belonging to a state. It would not be claimed, for instance, that under a franchise from Congress to construct and operate an interstate railroad the grantee thereof could enter upon the state-house grounds of the state, and construct its depot there, without paying the value of the property thus appropriated. Although the state-house grounds be property devoted to public uses, it is property devoted to the public uses of the state, and property whose ownership and control are in the state, and it is not within the competency of the national government to dispossess the state of such control and use, or appropriate the same to its own benefit, or the benefit of any of its corporations or grantees, without suitable compensation to the state. This rule extends to streets and highways; they are the public property of the state. While for purposes of travel and common use they are open to the citizens of every state alike, and no state can by its legislation deprive the citizens of another state of such common use, yet when an appropriation of any part of this public property to an exclusive use is sought, whether by a citizen or corporation of the same or another state, or a corporation of the national government, it is within

the competency of the state, representing the sovereignty of that local public, to exact for its benefit compensation for this exclusive appropriation. It matters not for what that exclusive appropriation is taken, whether for steam railroads or street railroads, telegraphs or telephones, the state may if it chooses exact from the party or corporation given such exclusive use pecuniary compensation to the general public for being deprived of the common use of the portion thus appropriated."

These views were reaffirmed and applied in *Postal Tel. Co.* v. *Baltimore,* 156 U. S. 210, [15 Sup. Ct. 356, 39 L. Ed. 399], and approved in *Richmond* v. *Southern Bell T. & T. Co.,* 174 U. S. 771, [19 Sup. Ct. 778, 43 L. Ed. 1162], and they have not been modified by any subsequent decision. It thus appears to be settled by the decisions of the court of last resort on such questions, that even if a state has no power to absolutely prohibit such exclusive use of portions of its public highway by a telegraph company operating under said act (see, however, *Western Union Tel. Co.* v. *Pennsylvania etc. Co.,* 195 U. S. 540, [25 Sup. Ct. 133, 49 L. Ed. 312]), it nevertheless has a property interest in its public highways which is not divested by a grant of the United States to the telegraph company, and which may be the subject of grant from the state to the company. Notwithstanding the act of Congress, the telegraph company cannot appropriate to its exclusive use portions of such highways without being subject to charges on behalf of the state by way of compensation for such use. It is obvious, then, that if the state grants to such a company the right to such exclusive possession of portions of its public highways without compensation, the company obtains thereby something not acquired by it under the act of Congress, and that such right so acquired by the company is nothing more nor less than a franchise, within a well-recognized meaning of that term, granted by the state, having for purposes of assessment a local *situs,* and being assessable in the particular city or county in which the streets so occupied are situated. (*Stockton etc. Co.* v. *San Joaquin Co.,* 148 Cal. 318, [5 L. R. A. (N. S.) 174, 83 Pac. 54].) It is also clear that where there is a valid law of the state purporting to grant such right to telegraph companies generally, the exclusive occupation by a company of portions of public highways for the authorized

purposes is an acceptance by it of the offered franchise. (*Stockton etc. Co.* v. *San Joaquin Co.,* 148 Cal. 318, [5 L. R. A. (N. S.) 174, 83 Pac. 54].)

In the light of what we have said, it appears that the case of *Western Union Tel. Co.* v. *Visalia,* 149 Cal. 744, [87 Pac. 1023], does necessarily decide that section 536 of the Civil Code was effectual to grant this right as to all highways lying outside of municipalities, and that where such a grant was accepted by a company the subsequent inclusion of a highway so occupied by a municipality existing under such laws relating to municipal corporations as were contained in sections 4354 to 4456 of the Political Code, would not operate to impair the effect of such grant. Section 536 of the Civil Code has, however, never been confined in terms to highways outside of municipalities, but always purported to apply to all public highways in the state. The term "public highways" includes streets in cities. (Pol. Code, sec. 2618.) It is not claimed that at any time prior to the construction of its telegraph system by plaintiff in the city of Los Angeles, the state had vested in that municipality any right of control over public highways therein, except in so far as the legislature had empowered the common council of any city, among other things, "to regulate the streets, wharves, piers, and chutes in the city and the use thereof." (Pol. Code, sec. 4408.) Manifestly this provision when considered in connection with section 536 of the Civil Code, adopted at the same time, cannot be construed as conferring any greater power than that of doing such things in regard to the streets and the use thereof as were justified in the legitimate exercise of the police power, and would not have warranted the municipality in attempting to exclude a telegraph company from such use of its streets as was expressly authorized by section 536 of the Civil Code, or in exacting compensation for such use. It warranted such regulation of the use as was incident to a proper exercise of the police power, and nothing more. It is universally recognized that the state in its sovereign capacity has the original right to control all public streets and highways, and that except in so far as that control is relinquished to municipalities by the state, either by provision of the state constitution or by legislative act not inconsistent with the constitution, it remains with the state legislature to be exercised in any manner not

prohibited by the state constitution. From what we have said it is apparent that the case of *Western Union Tel. Co.* v. *Visalia*, 149 Cal. 744, [87 Pac. 1023], necessarily determined material questions arising in this case in such a manner as to sustain the validity of the assessment involved. In other words: If that decision is to be followed, section 536 of the Civil Code constituted a grant to telegraph companies of rights in regard to the streets of cities, in addition to the rights given by the act of Congress, which to the extent that they were accepted and availed of by any company, constituted a franchise granted by the state and accepted by the company. This so-called state franchise included the right to such exclusive occupation by the company of portions of the streets as is maintained for the purpose of its system, leaving nothing in that behalf to be granted by the municipality. Under that decision, so far as the telegraph company holds these rights, it holds them solely under and by virtue of section 536 of the Civil Code. It is proper to say that there is no question in this case of any attempted revocation or modification by either state or city of any privilege purported to be granted by the state to plaintiff, and that the city of Los Angeles has never purported to grant any of such privileges to plaintiff, but has apparently acquiesced in the claim of plaintiff that it is entitled to use its streets, subject only to the lawful exercise by the city of such rights in regard to such use as it has under the police power. What those rights are is a question in no way involved in this case.

It is earnestly urged by counsel appearing as *amici curiæ*, that section 536 of the Civil Code is either unconstitutional or cannot be construed as it was in the Visalia case, and that if neither of these contentions be upheld, it nevertheless must be held that the section has been repealed by implication so far as the city of Los Angeles is concerned. As to the latter claim, it is sufficient to say that none of the laws upon which the claim of repeal by implication is based was enacted prior to 1883, which was long after the construction of plaintiff's system along the streets of the city of Los Angeles. Assuming that section 536 of the Civil Code was a grant of the right to such use of the streets, we are of the opinion that it must be held, to use the language of the United States circuit court of appeals in *Sunset Tel. & Tel. Co.* v. *Pomona*, 172 Fed. 837,

[97 C. C. A. 251], that the maintenance and operation of such system "was an acceptance by it of the provisions of that statute, which thereby became a contract between the company and the state, secured by the constitution of the United States against impairment by any subsequent state legislation." In this connection it should be said that learned counsel for plaintiff assert that inasmuch as it constructed its lines in the streets of Los Angeles in the year 1870, prior to the adoption of section 536 of the Civil Code, it never manifested any acceptance of the rights offered by the statute and has exercised no franchise thereunder. Of course, the grant of the right to "construct" and "erect" contained in the section necessarily implied the right to maintain. Although the construction was before the adoption of the Civil Code section, the continued maintenance of exclusive possession of portions of highways without compensation was a sufficient acceptance. It once being established that the act of Congress did not give the right to such exclusive possession without compensation, the maintenance of such possession by plaintiff was necessarily under the Civil Code section, and cannot be attributed to any other authority.

Returning to the points made as to the proper construction of section 536 of the Civil Code, and its constitutionality if it be given the effect attributed to it in the Visalia case: While there is some conflict in the authorities cited from other states, we are of the opinion that the weight of authority and the better reasoning support the construction given by the Visalia case, viz.: that the section was a grant by the state to all telegraph corporations accepting the same, of the rights therein specified. The reasons given by learned counsel in support of a contrary construction do not appeal to us as having much force in the face of the clear and unambiguous language used. And to the extent that the offer of the state contained in the section was accepted by a telegraph company by actual occupation of a highway prior to any repeal, modification, or suspension of the section, no right of revocation having been reserved, such telegraph company has vested rights that cannot be taken away by state or city without compensation.

In this connection, learned counsel claim that a right to revocation was reserved, basing their claim on the constitu-

tional provision that all laws passed pursuant to the section providing for the formation of corporations may be altered from time to time or repealed (Const. of 1849, sec. 31, art. IV; Const. of 1879, sec. 1, art. XII), and on section 327 of the Political Code, providing that a statute may be repealed at any time except when otherwise provided therein, and that persons acting thereunder are deemed to have acted in contemplation of this power of repeal. The effect of similar provisions was learnedly discussed by Justice Cooley in *City of Detroit* v. *Detroit etc. Co.,* 43 Mich. 140, [5 N. W. 275], where it was sought, under express authority of an act of the legislature of the state, to deprive a plank road company of its right acquired under a prior statute to maintain a toll-gate within the existing corporate limits of the city of Detroit. It was there concluded that the effect would be to deprive the company of property lawfully acquired, and that there was no well considered case in which it had been held that a legislature, under the general power to amend a charter, might take from a corporation any of its substantial property or property rights. A distinction is made in the opinion between the cases involving the question of the liability of corporations to the control of the general police laws and cases involving acts passed solely in the exercise of the reserved general power to amend and repeal charters of corporations. Of course, the liability of plaintiff to all such reasonable regulations as is warranted in the proper exercise of the police power cannot be disputed. In fact this is expressly stipulated by the provisions in section 536 of the Civil Code, that the system of the telegraph company must be constructed "in such manner and at such points as not to incommode the public use of the road or highway." But in so far as actual occupation of a highway by a telegraph company was taken or had under section 536 of the Civil Code, we are of the opinion that a vested right resulted, subject only to the proper exercise of the police power, and that it must be held that there was no such reservation as warranted such right being taken away without compensation.

We are satisfied, too, that there was nothing in the old constitution of this state, which was in force at the time of the adoption of the codes and up to the year 1880, that prohibited the granting of such rights to telegraph corporations. The

only provision referred to by learned counsel is section 11 of article I of that constitution, which provided that "all laws of a general nature shall have a uniform operation." We do not see that this provision is at all applicable. The claim is that the grant made by section 536 of the Civil Code is void because it is limited to "corporations,"·and does not include natural persons or partnerships. It is not to be doubted that a grant of such rights to a single telegraph corporation would have been valid under the old constitution, which contained no inhibition whatever against special legislation. Section 536 was such a grant to all corporations, and was no more objectionable so far as legal prohibition is concerned, than a grant to a single corporation. But we are not prepared to hold that the section is violative of the provisions of our present constitution relating to special legislation. We may reasonably assume that good and sufficient reasons may be apparent to the legislature why the right to exclusively occupy portions of the public highways for the purposes specified should be confined to corporations organized and existing for the purpose of doing a telegraph business, and why such corporations constitute a class to which such a grant may properly be restricted without violating our constitutional provisions against special legislation. If it may reasonably be so assumed the legislation must be upheld, for it is well settled that to warrant a court in adjudging legislation void on this ground it must clearly appear that there was no sufficient reason to warrant the legislative department in finding a difference and making the discrimination. Every presumption is in favor of the validity of an act of the legislature, until its invalidity is made to appear. (See *Ex parte King,* 157 Cal. 161, [106 Pac. 578], and cases there cited.)

It is suggested that section 536 of the Civil Code was repealed upon the adoption of the constitution of 1879 by reason of section 6 of article XII, contained therein, declaring that "all existing charters, grants, franchises, special or exclusive privileges, under which an actual and *bona fide* organization shall not have taken place, and business been commenced in good faith, at the time of the adoption of this constitution, shall thereafter have no validity." As we have seen, the repeal of section 536 of the Civil Code, even by a constitutional provision, could not be held to have affected the rights of

plaintiff in so far as it had already acquired vested rights under section 536. But we are satisfied that this provision of the constitution cannot reasonably be construed as affecting section 536 of the Civil Code, at all. So far as any company had not at such time availed itself of and thus accepted the provisions of section 536, there was no "existing" grant or franchise to be annulled, and there was never any "special or exclusive" privilege given by the section. The constitutional provision in question was in no way applicable.

It follows from what we have said that plaintiff's exclusive occupation of portions of the streets of the city of Los Angeles without liability for compensation, to the extent at least to which its system was constructed therein at the time of the adoption of section 536 of the Civil Code, and its right to such occupation free of charge by the city, are based solely on the last named section, and that as to such occupation and right this section constitutes a grant in the nature of a franchise accepted by it, constituting property located within this state and assessable in the county of Los Angeles. The claim of plaintiff that taxation of this franchise is in any way taxation of its federal franchise is utterly without basis. The tax is one solely on valuable property within this state, viz., the right to the permanent and exclusive use of portions of the public streets of the city of Los Angeles, free of compensation—a tax differing in no material respect from one levied on its poles and wires located within such city. (See, generally, *Central Pacific R. R. Co.* v. *California,* 162 U. S. 91, 118, [16 Sup. Ct. 766, 40 L. Ed. 903].)

No other point is made against the validity of the assessment here involved. There is, of course, no question presented by this record as to the correctness of the valuation placed upon the property by the assessor.

The judgment is reversed.

Sloss, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.

Mr. Justice Shaw deems himself disqualified to act in this case, by reason of relationship to one of the attorneys of record.