[Civ. No. 3600.  Second Appellate District, Division One.—July 5, 1921.]

COUNTY OF INYO, Respondent, v. FRED M. HESS et al., Appellants.

[1] TELEGRAPHS AND TELEPHONES—USE OF COUNTY HIGHWAYS—RIGHT OF INDIVIDUAL.—A private individual has no right to use county highways over which to construct a telephone line, save and except upon a grant of such right made by the board of supervisors in the exercise of the powers vested in it by subdivision 35 of section 4041 of the Political Code, and under and pursuant to the restrictive provisions of the Broughton Act (Stats. 1905, p. 777).

[2] ID.—EXERCISE OF FRANCHISE BY PRIVATE INDIVIDUAL—PERCENTAGE OF GROSS RECEIPTS—LIABILITY.—A telephone line operated by a private individual under a franchise granted by a board of supervisors after five years from the date of the grant is subject to the annual payment of the two per cent tax upon the gross receipts, in the absence of a transfer of such line to a telephone corporation.

[3] ID.—TELEPHONE CORPORATIONS—USE OF PUBLIC HIGHWAYS—RIGHTS UNDER SECTION 536, CIVIL CODE.—Under and by virtue of the provisions of section 536 of the Civil Code, telephone corporations are granted the right and privilege to use the public highways over which to construct and operate lines of telephone wires, free from any grant made by subordinate legislative bodies and unrestricted by the provisions of the Broughton Act, and their right to do so applies not only to lines constructed by them, but to lines in place which they acquire by purchase from private individuals, constructed under franchises granted by boards of supervisors.

APPEAL from a judgment of the Superior Court of Inyo County. Wm. D. Dehy, Judge. Reversed.

The facts are stated in the opinion of the court.

I. B. Potter, Newman Jones and Henry W. Coil for Appellants.

Jess Hession, Richard S. Miner and W. B. Mathews for Respondent.

SHAW, J.—In this action the county of Inyo, as plaintiff, sought the recovery of two per cent of the gross annual

receipts derived from the operation of a telephone system during the years mentioned in the complaint for the franchise or privilege of using the county highways over which to construct and operate telephone and telegraph wires.

From a judgment in favor of plaintiff, defendants have appealed.

The decision of the case involves the interpretation and application of the so-called Broughton Act (Stats. 1905, p. 777), under and pursuant to which it is claimed a telephone franchise was granted to defendant Hess by plaintiff to construct telephone lines over the public highways of Inyo County, and in connection therewith the rights of the corporations as assignees under section 536 of the Civil Code.

In the absence of findings, which were waived, and omitting matters not pertinent to the decision, under our view of the case, the material facts are as follows: On April 21, 1906, the board of supervisors of Inyo County, after full compliance with the provisions of the Broughton Act, by Ordinance No. 95 duly adopted, granted to Hess, as the highest bidder therefor, a franchise to construct a telephone system over all the public roads and highways in said county, which ordinance, in accordance with the provisions of the Broughton Act, provided that the privilege so granted should be fully exercised within three years from the date of the grant, and that no work or construction in extending said lines or system of telegraph or telephone poles should be permitted after the lapse of three years from said date, to wit, April 21, 1906. Among other obligations imposed upon Hess as grantee of the franchise was one requiring that he and his assigns should, commencing at the expiration of five years from the making of the grant, pay to the county two per cent of the gross annual receipts arising from the use and operation of the franchise. The three years within which Hess was to exercise the privilege granted expired on April 21, 1909, prior to which time he, under the franchise so granted, constructed his telephone lines over some 40-odd miles of public highway, connected with which and as a part of the system was some 19 miles constructed over government lands and private rights of way, making a total of about 60 miles which Hess owned and had in operation on April 21, 1909, at which time, under the provisions of the franchise granted,

his privilege to extend the line over additional highways terminated. On June 30, 1909, and prior to the expiration of five years from date of the grant, when the two per cent tax attached, he sold, transferred, and assigned all of his rights in and to the franchise and telephone system to the Inyo Telephone Company, a corporation, which company, on March 5, 1912, sold and transferred the same to the Interstate Telegraph Company, a corporation, both of which corporations were entitled to do a telephone business in the state of California. Notwithstanding the time for constructing the system expired on April 21, 1909, both of said corporations, without further grant than that so made to Hess, continued the construction of lines of telephone in extending the system, to which they added 176 miles, some 50 miles of which were constructed over the public highways, the balance being over government lands and private rights of way. On November 9, 1915, in compliance with a demand from plaintiff, Hess, as vice-president and general manager of the Interstate Telegraph Company, which then owned and operated the entire system, filed with the county clerk separate statements purporting to be for the gross income, less that derived from interstate business, arising from the operation of the telephone system for each of the five years immediately following April 21, 1911, which statements, duly verified and varying only in amounts and the year for which each was made, were in form as follows: "Interstate Telegraph Company. Gross Receipts in Inyo County, exclusive of interstate business, April 21, 1911, to April 20, 1912, $14,088.22." The amounts as stated for the other years, in order, were: For the second year, $20,897.28; for the third year, $18,993.48; for the fourth year, $20,498.37; and for the fifth year, $20,150.77, each of which sums was made the subject of a separate cause of action. While these statements were exclusive of income derived from interstate business which the assignee of Hess conducted over the system and lines with which it was connected, they did include income derived from the operation of the telephone system in the incorporated town of Bishop, which latter income, upon defendants showing the amount thereof, was by the court deducted from the gross income as shown by defendants' statements, and judgment rendered for each year upon the amount

53 Cal. App.—27

stated, less the Bishop revenue. It thus appears that the entire system of telephone lines, excluding the municipal line in the town of Bishop and a certain line acquired by the Interstate Company from the Nevada-California Power Company, the use of which enabled defendants to conduct an interstate business by transmitting messages from points in California to points in the state of Nevada, consisted of about 240 miles in length, 60 miles of which, mostly over highways, were constructed by Hess prior to the time specified in the grant within which his right to erect telephone poles in the highways terminated, and approximately 180 miles constructed by his successors after the termination of his right to extend the lines under his franchise. While the judgment rendered excluded any percentage upon income derived from interstate business and income derived from the operation of the plant in the town of Bishop, it was computed not only upon income derived from the operation of the 60 miles of line constructed by Hess under the terms of his franchise, but also upon income derived from the 180 miles of line constructed by the Inyo Telephone Company and the Interstate Telegraph Company after the time when the rights of Hess to occupy the highways with poles in new construction had, under the terms of the franchise, ceased and terminated, and, in so far as the public roads were used therefor, without rights so to do, other than as such right is granted by section 536 of the Civil Code.

Excepting the legislative grant made in 1872 by section 536, authorizing *telegraph* companies to use the public highways for the purpose therein specified, and which right was by an amendment of the section approved March 20, 1905, extended to *telephone* companies as well, the power to grant franchises to use public highways for secondary purposes appears to have been generally delegated to the local subdivisions of the state, subject to certain restrictions. Assuming that section 536 is not affected by the provisions of the Broughton Act, and that, in accordance with the plain import of the language used, it grants to both telegraph and telephone *corporations* the right to construct lines of telegraph and telephone by means of poles for supporting insulators, wires, and other necessary fixtures thereof over and along the public roads, such right

is restricted to *corporations only,* and cannot be construed as a grant to individuals. (*City of San Diego* v. *Kerckhoff,* 49 Cal. App. 473, [193 Pac. 801]; *Western Union Tel. Co.* v. *Hopkins,* 160 Cal. 122, [116 Pac. 557].) They have no right to appropriate the use of the highways for such secondary purposes save and except upon a grant of the privilege so to do made by the legislative body of the local subdivision concerned, which in this case was the board of supervisors of Inyo County. Its authority to make the grant is found in section 4041 of the Political Code, subdivision 35 of which provides that such boards, subject to such limitations and restrictions as are prescribed by law, shall have power "to grant franchises along and over the public roads and highways for all lawful purposes, upon such terms and conditions and restrictions as in their judgment may be necessary and proper." While the Broughton Act does not purport to either grant or authorize the granting of such franchises, it does in express terms place restrictions upon the exercise of the power so delegated to boards of supervisors. (*Sunset Tel. & Tel. Co.* v. *Pasadena,* 161 Cal. 265, [118 Pac. 796]; *Oro Electric Corp.* v. *Railroad Commission,* 169 Cal. 466, [147 Pac. 118].) The provision thereof is that "every franchise or privilege to erect or lay telegraph or telephone wires, . . . upon any public . . . highway . . . proposed to be granted by boards of supervisors . . . of any county . . . within this state, except . . . telegraph or telephone lines doing an interstate business, . . . shall be granted upon the conditions in this act provided, and not otherwise." Hence, since the franchise to Hess as a private individual was granted by the board of supervisors, whose right so to do is in express terms made subject to the provisions of the Broughton Act, it must follow that that part of the telephone line in question constructed by him over highways prior to the time fixed in the grant for the termination of such right, less the income derived therefrom during the first five years of such period, is subject to the payment of two per cent per annum upon the gross income arising from the use of the right so granted, unless its acquisition by the telephone corporations so vested with the rights specified in section 536, under which they and

not Hess, the individual, operated the lines, exempted them from the payment.

A municipal telephone line from its nature and the service rendered is never complete. To meet the demands of the public it must be, and in fact is, constantly extended by adding new lines, using streets and highways therefor. Hence, if the grantee · of such privilege is restricted to three years within which to construct the same, it would seem that no authority existed for making such extensions after the expiration of such time. Notwithstanding such result, and construing the provision in accordance with the plain import of the language used, it would seem clear that, since as provided in the franchise granted to Hess his right to extend the lines by erecting poles in the highways had terminated when he transferred the telephone system and francise to the Inyo Telephone Company, such company by the purported transfer acquired no right to make extensions of the system under and by virtue of the franchise granted to Hess. In other words, it acquired no right from Hess under which it was authorized to erect telephone poles and wires over the portions of the highway which he had not occupied within the three-year period specified in Ordinance No. 95. Conceding the correctness of the proposition stated, and expressly disclaiming any right to occupy the highways under and by virtue of the act of Congress of July 24, 1866, appellants, as telephone corporations, insist that under the legislative grant made by said section 536 they were at all the times mentioned entitled not only to construct and maintain their telephone lines along and upon any public road or highway, free of any restrictions imposed by the Broughton Act, but entitled to acquire and operate the Hess lines likewise free from such restrictions. This section in its present form, except that it did not apply to telephone companies, was adopted in 1872, and when acted upon by a telegraph company it constituted a grant of the right as therein stated. (*Western Union Tel. Co.* v. *Hopkins,* 160 Cal. 106, [116 Pac. 557].) As originally adopted, however, it did not include telephone companies (*Davis* v. *Pacific Tel. & Tel. Co.,* 127 Cal. 312, [57 Pac. 764, 59 Pac. 698]), and hence it did not constitute a grant to corporations engaged in such business. On March 20, 1905, the

section was amended so that it applied to telephone corpo-
rations equally with telegraph corporations. The section
as amended, however, did not become operative until sixty
days after its passage. Two days later, to wit, on March
22, 1905, the Broughton Act, imposing conditions in the
granting of franchises, was adopted, with the provision that
it should take effect immediately. Excepting telegraph and
telephone lines doing an interstate business, and the pro-
vision that every franchise or privilege *granted by boards
of supervisors* to erect telephone wires along and upon the
public highways should be granted upon the conditions
specified therein and not otherwise, it provides that all acts
or parts of acts in conflict therewith are repealed, save
and except certain acts therein specified, among which sec-
tion 536 of the Civil Code is not mentioned. Hence the
question presented is whether section 536 (which, if valid,
designates telephone and telegraph corporations *solely and
alone* as subjects of legislative grant, free and independent
from any action on the part of the board of supervisors)
conflicts with the Broughton Act, the provisions of which
by the language employed appear to be limited to fran-
chises and privileges the granting of which is confided to
*"boards of supervisors, boards of trustees, or common
councils, or other governing or legislative bodies of any
county, city and county, city or town within this state."*
The question arose in the case of *City of Pomona* v. *Sunset
Tel. & Tel. Co.*, decided by the supreme court of the
United States (224 U. S. 330, [56 L. Ed. 788, 32 Sup. Ct.
Rep. 477, see, also, Rose's U. S. Notes]), wherein Justice
Holmes of that court, in discussing the question, said: "It
[the telephone company] contends that this act [the Brough-
ton Act] establishes conditions only for counties, cities, and
towns, and does not qualify the grant from the state in
the amended section 536. The appellant [city of Pomona],
on the other hand, argues that the franchise act repealed
section 536, so far as it affects this case, except as to
telephone companies doing an interstate business. In view
of the frame of the act as a whole, of a general repealing
clause at the end, naming certain exceptions of which sec-
tion 536 is not one, and of the fact that the grant of
such franchises seems generally to have been left to the
local subdivisions concerned, we construe the words quoted

as of general application, and are of opinion that they cannot be supposed to have had the narrow operation that would be left to them if there were in force a grant from the state of almost universal scope. Until the state court shall decide otherwise we must take section 536 to have been repealed, subject to the exception contained in the later act . . . '' Notwithstanding this high authority to the contrary, we are forced to the conclusion that the provisions of the Broughton Act are not in conflict with section 536 of the Civil Code, and hence the legislative grant therein made is not subject to the restrictions and limitations contained in the Broughton Act and which, according to the plain import of the language used therein, are applicable solely to franchises granted under delegation of power to the legislative bodies of local subdivisions of the state directly concerned, which, as we have seen, appears to have been the legislative policy pursued in granting rights in the public highways for all secondary uses *other than to corporations for telephone and telegraph lines* (and perhaps to railroad corporations), as to which, for reasons satisfactory to the legislature, it, instead of delegating to local legislative bodies the power to act in such matters, has itself by section 536 tendered to all such corporations a, franchise to use the highways for their lines, an acceptance of which is signified by their act in constructing the same over the highways so offered. Repeals by implication are not favored, and in the absence of express terms courts will not indulge in the presumption that the legislature intended by a later act to repeal a former one, if by a fair and reasonable construction effect can be given to both. This is particularly true where the effect of such repeal is to impair a settled prerogative of the government, as, in the instant case, the state's control of its highways. The two acts in question were adopted at about the same time, and it would seem improbable that the legislature would on one day amend section 536, under which for more than thirty years telegraph corporations had been accorded the right to use the highways over which to construct their lines, the sole purpose of the amendment being to give telephone corporations like rights, and the next day or day following pass a repealing act. On the contrary, the legislature must be deemed to have

recognized the fact that section 536 constituted a legisla-
tive grant, not to private individuals, but limited in its
operation to telegraph and telephone corporations only;
that the right of individuals to construct telephone and
telegraph lines over the highways and the right to use
the highways by either individuals or corporations for *all
secondary purposes* other than by corporations for telegraph
and telephone lines could be acquired only by action of
the local legislative bodies to which the power of granting
such privileges was delegated, and that as to grants of
franchises made in the exercise of such power it was in-
tended they should be subject to the conditions prescribed
in the Broughton Act. Since the act thus in terms limits
its operation to those franchises only which boards of
supervisors and other minor legislative bodies are authorized
to grant, it cannot, without violating well-recognized prin-
ciples of interpretation, be construed as applicable to the
statutory grant made directly by the legislature and which
without any action on the part of boards of supervisors
authorized such corporations to occupy the highways. In
our opinion, there is no repugnance between the act and
section 536. Upon a fair and reasonable construction both
can be given effect, and hence our conclusion is that, in
constructing their lines of telephone over the public high-
ways of Inyo County after the date of the transfer made
by Hess to the Inyo Telephone Company, the corporations
named acted under the right so to do granted by section
536, unrestricted by the provisions of the Broughton Act
or any of the conditions contained in Ordinance No. 95
granting the franchise to Hess.

Were the Hess lines as operated by the corporations as
part of the telephone system subject to the payment
of the two per cent tax? We think not. The grant to
Hess was ''over, along and upon any or all public high-
ways in the county of Inyo,'' and in accordance with the
act it was made subject to the provision that the grantee
and his assigns should, during the term thereof, pay
to the county two per cent of the gross annual receipts
arising from the use, operation and possession thereof. It
cannot be said, however, that this imposed upon him the
duty of constructing telephone lines upon all the highways
of the county, and while the grant was for a term of

twenty-five years, it cannot be construed as requiring him to operate the lines so constructed for any given period. So long, however, as he or his assigns, if other than a telephone corporation, operated them, the gross revenue derived from such operation was subject to the payment of the two per cent arising from such operation. As we have seen, the right of the corporations to use the highways existed independently of the Hess franchise, and under the assignment thereof they took nothing other than what they already had, namely, the right to occupy the highways with poles and lines of wire constructed by them. This right, in our opinion, implies the right to use the highways for the lines constructed by Hess and which they acquired by purchase. While the accepted meaning of the word "construct" is to assemble or build, it should, as used in section 536, be construed to apply to lines in place and purchased by such corporations. The operation of the lines by the corporations was not under the Hess franchise, but under an existing and superior right granted the corporations by section 536. As operated by the corporations, there was no gross revenue arising from the use, operation, and possession of the Hess franchise. Their right to use the highways in operating such lines was not impaired by the fact that Hess, by a naked assignment, transferred the franchise to them. We perceive no difference between the case as stated and one where an individual without a franchise wrongfully occupies highways in constructing a telephone line which as built he transfers to a telephone corporation having the right under its legislative grant to operate it.

[1] Our conclusions are: First, that a private individual has no right to use county highways over which to construct a telephone line, save and except upon a grant of such right made by the board of supervisors in the exercise of the power vested in it by subdivision 35 of section 4041 of the Political Code, and under and pursuant to the restrictive provisions of the Broughton Act; [2] second, that so long as he and his assigns operate the line under such franchise and after five years from the date of the grant, it, in the absence of a transfer thereof to a telephone corporation, is subject to the annual payment of the two per cent tax upon the gross receipts arising

from the use of the franchise; **[3]**  third, that under and by virtue of the provisions of section 536 of the Civil Code, telephone corporations are granted the right and privilege to use the public highways over which to construct and operate lines of telephone wires, free from any grant made by subordinate legislative bodies, and unrestricted by the provisions of the Broughton Act, and that their right so to do applies not only to lines constructed by them, but to lines in place which they acquire by purchase from private individuals, constructed under franchises granted by boards of supervisors.

If we are correct in these conclusions, it follows therefrom that the judgment must be reversed and the action, as disclosed by this record, dismissed; hence it is unnecessary to discuss other grounds upon which appellants base their claim for a reversal.

The judgment is reversed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 1, 1921.

All the Justices concurred, except Sloane, J., who did not act.