[Sac. No. 6353. In Bank. Apr. 15, 1955.]

CITY OF PETALUMA, Appellant, v. THE PACIFIC TELEPHONE AND TELEGRAPH COMPANY (a Corporation), Respondent.

Karl Brooks, City Attorney, and Stephen B. Robinson for Appellant.

Pillsbury, Madison & Sutro, John A. Sutro, Francis N. Marshall and Noble K. Gregory for Respondent.

GIBSON, C. J.—The city of Petaluma brought this action to restrain Pacific Telephone and Telegraph Company from using city streets for telephone and telegraph service until it obtains a municipal franchise to conduct a communications business and to use the streets and other public places for its lines and equipment. A general demurrer was sustained to the complaint, and the city has appealed from the ensuing judgment.

Petaluma operated as a city of the fifth class from 1884 until 1911, when it obtained a freeholders' charter. The Sunset Telephone and Telegraph Company commenced the

operation of a telephone system within the city in 1891 under a 25-year municipal franchise, which was later extended to 1926. Sunset assigned its properties and franchises to Pacific in 1917, and Pacific operated under the Sunset franchise until it expired. A new franchise was granted to Pacific in 1926 for a 25-year term, and upon its expiration in 1951 Pacific refused to apply to the city for a further franchise.

The principal question to be decided is whether Pacific is entitled to use the streets and other public places within the city for its telephone lines and equipment under a state franchise which it claims to have acquired pursuant to the provisions of section 536 of the Civil Code, as reenacted in 1905.* (Stats. 1905, p. 492.)

The city concedes, as indeed it must, that in 1905 the Legislature had the *power* to grant franchises to telephone companies to use streets and other public places within municipalities then existing as cities of the fifth class. It is contended, however, that the Legislature did not intend to exercise this power by the reenactment of section 536. In support of this contention the city asserts that in 1905 it had the right to grant a telephone franchise under section 764 of the Municipal Corporations Act of 1883, and that it does not clearly appear that there was an intention to deprive the city of its franchise rights by the subsequent reenactment of section 536. In 1905, section 764 of the Municipal Corporations Act provided that the board of trustees of a city of the fifth class shall have the power to "permit the construction and maintenance of telegraph, telephone, and electric light lines" in the public streets, and to "do and perform any and all other acts and things necessary and proper to carry out the provisions of this chapter, and to exact and enforce within the limits of such city all other local, police, sanitary, and other regulations as do not conflict with general laws." (Stats. 1905, pp. 45, 46, 47; Mun. Corp. Act., § 764, subds. 13, 19. [The effective date of the 1905 amendment of section 764 was approximately 17 days before the effective date of section 536 as reenacted.])

---

*This section now appears as section 7901 of the Public Utilities Code, but it will be referred to in this opinion as section 536. It reads: "Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this state, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters."

 Although the power of the state to grant franchises may be delegated to cities, the intention to do so must be clearly expressed, and any doubt as to whether there has been such a delegation must be resolved in favor of retention of the power by the state. (See *Pacific Tel. & Tel. Co.* v. *City of Los Angeles, ante,* p. 272 [282 P.2d 36].) There would appear to be considerable doubt whether section 764 authorizes a city to grant a franchise for the use of streets and public places by a telephone company or merely recognizes the power of a city to regulate the location and manner of installation of telephone lines and equipment. We need not decide this question, however, since we are satisfied that, after the reenactment of section 536 in 1905, the state has had the exclusive power to grant franchises for the use of all streets, highways and public places for the construction, maintenance and operation of telephone lines and equipment except as to those areas within the 1905 boundaries of a city which then had a freeholders' charter giving it such franchise powers.

Before the reenactment of section 536, county boards of supervisors had been given the power to "grant franchises along and over the public roads and highways for all lawful purposes." (County Government Act, Stats. 1897, pp. 452, 466; Pol. Code, § 4041, subd. 35; now contained in Gov. Code, § 26001.) Pursuant to this authorization county franchises were granted to telephone companies to use highways outside of incorporated areas for the construction and maintenance of lines and equipment. (See *County of Los Angeles* v. *Southern Calif. Tel. Co.,* 32 Cal.2d 378 [196 P.2d 773]; *County of Inyo* v. *Hess,* 53 Cal.App. 415, 419 [200 P. 373].) In the County of Inyo case, the court in considering the effect of the reenactment of section 536 upon the right of a county to grant a franchise for the use of highways for construction and maintenance of telephone lines, concluded that the state franchise tendered by section 536 to telephone corporations was superior to and free from any grant made by a subordinate legislative body. The opinion states that "for reasons satisfactory to the Legislature, it, instead of delegating to local legislative bodies the power to act in such matters, has itself by section 536 tendered to all [telephone and telegraph] corporations a franchise to use the highways for their lines, an acceptance of which is signified by their act in constructing the same over the highways so offered." (53 Cal.App. at p. 422.) The decision necessarily was based on the theory

that section 536 took precedence over the broad provision of the County Government Act of 1897 authorizing counties to grant franchises along and over public highways.

The reasoning underlying the decision in the County of Inyo case is equally cogent in determining the effect of section 536 upon section 764 of the Municipal Corporations Act and leads to the conclusion that section 764 was superseded to the extent that it authorized the granting of franchises for telegraph and telephones lines. In accord with the rule that the latest legislative expression will be held controlling when there are conflicting statutory provisions, it has been held that various provisions of the Municipal Corporations Act were superseded to the extent that they were inconsistent with later enactments. (*Millsap* v. *Balfour*, 154 Cal. 303, 304 [97 P. 668]; *City of Sonora* v. *Curtin*, 137 Cal. 583, 588 [70 P. 674]; see *Ex parte Jackson*, 143 Cal. 564, 566, 572-573 [77 P. 457].) It is apparent that, insofar as section 536 tendered a franchise to use city streets, it was inconsistent with section 764. The words "along and upon any public road or highway" in section 536 as originally enacted were intended to mean all public highways in the state, including city streets (*Western Union Tel. Co.* v. *Hopkins*, 160 Cal. 106, 118-119 [116 P. 557]), and there is no indication of any different intent when the same words were used in reenacting the section in 1905, the only purpose of the change being to add telephone corporations (see *County of Los Angeles* v. *Southern Calif. Tel. Co.*, 32 Cal.2d 378, 382 [196 P.2d 773]; *City of Salinas* v. *Pacific Tel. & Tel. Co.*, 72 Cal.App.2d 494, 497 [164 P.2d 905]). Accordingly, section 536, being the later enactment, must be held to have superseded section 764 to the extent that the sections were inconsistent.

It follows that Sunset, Pacific's predecessor, by constructing, maintaining and operating telephone lines, acquired a state franchise to use the streets and other public places in the city for telephone lines and equipment. The state franchise rights thus acquired were vested rights which could not be impaired by a subsequent delegation of power to the city under a freeholders' charter. (*Cf. Pacific Tel. & Tel. Co.* v. *City of Los Angeles, ante*, p. 272 [282 P.2d 36]; *Postal Tel.-Cable Co.* v. *Los Angeles*, 160 Cal. 129, 131 [116 P. 566]; *Western Union Tel. Co.* v. *Hopkins*, 160 Cal. 106, 120 [116 P. 557]; *City of San Diego* v. *Southern Calif. Tel. Co.*, 92 Cal.App.2d 793, 808 [208 P.2d 27]; see *County of*

*Los Angeles* v. *Southern Calif. Tel. Co.*, 32 Cal.2d 378, 384 [196 P.2d 773].) Pacific, as assignee of Sunset's franchises, may not, therefore, be required to obtain a municipal franchise to use the streets and other public places for its lines and equipment.

The other questions presented on this appeal are disposed of by our decision in *Pacific Tel. & Tel. Co.* v. *City of Los Angeles, ante,* p. 272 [282 P.2d 36].

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.