STATE, APPELLANT, *v.* WESTERN UNION TELEGRAPH COMPANY, RESPONDENT.

(No. 2,932.)

(Submitted June 8, 1911.  Decided June 12, 1911.)

[117 Pac. 93.]

*Taxation—Franchises—Telegraph—Interstate Commerce—Governmental Business.*

Telegraph—Interstate Commerce.
   1.   Upon acceptance by the Western Union Telegraph Company of the provisions of the Act of the Congress passed to aid in the construction of telegraph lines and to secure to the government their use for postal, military and other purposes (14 Stats. at Large, 221), that company became an agency of the federal government for the transaction of its postal business, and an instrumentality of interstate and foreign commerce.

Taxation—Telegraph—Interstate Commerce—Governmental Business.
   2.   A state may not tax the right to carry on interstate commerce or an agency employed in conducting the business of the government.

Same—Franchise Tax—When Void.
   3.   Where an assessor had assessed in a lump sum the franchise of a telegraph company doing an interstate, intrastate, as well as governmental business, instead of fixing a separate valuation upon the right of the company to do intrastate private business only, the entire assessment on the franchise was void, and the tax, paid under protest, illegal.

Same—Telegraph—What Part of Franchise Taxable.
   4.   *Semble:* That a state may tax the right of a telegraph company doing an interstate and intrastate business, to transact intrastate private, as distinguished from governmental, business, seems to be recognized.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by the State against the Western Union Telegraph Company. From a judgment for defendant, the State appeals. Affirmed.

*Mr. Albert J. Galen,* Attorney General, and *Mr. William L. Murphy,* Assistant Attorney General, submitted a brief in behalf of Appellant; *Mr. Murphy* argued the cause orally.

The respondent company is a New York corporation, and is not, therefore, entitled to enter Montana except under the conditions which the Constitution and laws of Montana prescribe for a corporation of like character.  (*Paul* v. *Virginia,* 8

Wall. (U. S.) 168, 19 L. Ed. 357.)    But it has a character which excepts it from this rule, first, in that it is a corporation engaged in interstate commerce, and, second, it is operating over the public highways of the state of Montana under authority of an Act of Congress, *viz.*, the Act of July 24, 1866, and the Act of June 8, 1872, declaring all roads kept up and maintained to be post roads.    In view of the character of the respondent company, and the enactments of Congress last referred to, the company had and has an undoubted right to bring its lines into the state, and the legislature is and has been powerless either to forbid its entrance or to impose burdens upon it which might hamper it in carrying out its interstate business or performing its offices for the government.    But the agreed statement shows that it is engaged in the business of transmitting messages "from point to point within the state of Montana," which business can only be done through the sanction of the laws of this state, and, that sanction having been given, it constitutes a franchise from the state to the company, which under the Constitution and the authority of the case of *Northwestern M. L. I. Co.* v. *Lewis & Clark County,* 28 Mont. 491, 98 Am. St. Rep. 572, 72 Pac. 982, is property and mandatorily the subject of taxation. Respondent is performing all the functions that might be performed by a local company, all the lines of which are entirely within the state.    This privilege, this right to do business, this franchise, is certainly not derived from any grant made either by the federal Congress or by the legislature of New York, the domicile of the company, nor does the privilege follow from the nature of the corporation, being one engaged in commerce between the states.    There are a great number of cases decided by the supreme court of the United States which lay down the doctrine that a state cannot prevent the entry of a corporation acting under federal charter or engaged in interstate commerce. Typical of these is the case of *Crutcher* v. *Kentucky,* 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649.    The *Crutcher Case* is easily distinguished from that at bar, in that the Kentucky statute sought to prevent a foreign express company from conducting any business whatsoever before complying with its terms.    This

was clearly an unwarranted attempt to place a burden upon interstate commerce in violation of the commerce clause of the United States Constitution. No clearer distinction between these cases can be drawn than that contained in *Osborne* v. *Florida,* 164 U. S. 654, 17 Sup. Ct. 214, 41 L. Ed. 586. (See, also, *Pullman Co.* v. *Adams,* 189 U. S. 420, 23 Sup. Ct. 494, 47 L. Ed. 877; *Paul* v. *Virginia, supra.*)

As to whether the franchise tax is levied upon the federal franchise or upon the federal and state franchises together, or only upon the franchise for doing local business, is a question for this court to decide. (*Leffingwell* v. *Warren,* 2 Black (U. S.), 599, 17 L. Ed. 261; *People* v. *Weaver,* 100 U. S. 539, 25 L. Ed. 705; *Noble* v. *Mitchell,* 164 U. S. 367, 17 Sup. Ct. 110, 41 L. Ed. 472.)

The late Washington case of *Western Union Tel. Co.* v. *Lakin,* 53 Wash. 326, 101 Pac. 1094, 17 Ann. Cas. 718, was relied upon by counsel in the court below, but an examination of that case will show that the court holds the assessment to be an ineffectual attempt to assess a federal franchise without proportioning its value over the entire system. We contend that in this case the levy was made only upon that franchise by which the company carries on its local or intrastate business.

*Messrs. William Wallace, Jr., John G. Brown,* and *R. F. Gaines,* submitted a brief in behalf of Respondent. *Mr. Wallace* argued the cause orally. *Mr. Rush Taggart* and *Mr. Francis N. Whitney,* of Counsel.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1909 the assessor of Silver Bow county made an assessment of the property of the Western Union Telegraph Company, in form as follows:

Pole lines consisting of copper and iron wires..........$10,445
Office furniture and instruments......................   500
Franchise assessment ...............................   2,000

The taxes upon this valuation amounted to $249.57, and of that amount the telegraph company paid $204.57, but refused to pay the $45 representing the tax upon the assessment of $2,000 for *"franchise."* This action was commenced by the state to enforce the payment of the tax of $45. The cause was tried upon an agreed statement of facts, and resulted in a judgment for the defendant company. From that judgment the state appealed.

The facts agreed upon, so far as material here, are: (a) The Western Union Telegraph Company is a New York corporation which has been engaged in business in the territory and state of Montana for many years; (b) that on June 5, 1867, defendant company accepted the provisions of an Act of the Congress of the United States entitled "An Act to aid in the construction of telegraph lines and to secure to the government the use of the same for postal, military and other purposes," approved July 24, 1866, Chapter 230, 14 Statutes at Large, 221; (c) that the business of the telegraph company consists in transmitting messages by electric telegraph between points wholly within this state and between points within and without the state, and between the officers, agents and departments of the federal government; (d) that the assessment of $2,000 "represents the valuation by said assessor upon the right or privilege of carrying on the said telegraph business within the said county of Silver Bow."

The only question in dispute here is the right of the revenue officers of this state to collect a tax upon the *"franchise"* of this company. There is not any disagreement as to the meaning of the term "franchise," as used in the assessment or as used in the Constitution and statutes of this state.

By the Act of the Congress to which reference is made, the general government granted to telegraph companies, which should accept the provisions of the Act, rights of way over the public domain, along military or post roads, and over, under, or across navigable streams, and also granted the right to take and use public land for stations, and stone, timber, and other materials for construction work. As a consideration for the grant thus made, the government exacted (1) that government

communications should be given priority in transmission.; (2) that the rates for government business should be fixed by the postmaster-general; and (3) that the government might purchase all the lines and property of any consenting company. [1] The Western Union company, having accepted the benefits and burdens of this Act, thereby became an agency of the federal government for the transaction of its postal business, and an instrumentality of interstate and foreign commerce. (*City Council of Charleston* v. *Postal Tel. Co.*, 3 Am. Elect. Cas. 56; *Western Union Tel. Co.* v. *Mayor* (C. C.), 38 Fed. 552, 3 L. R. A. 449; *Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 96 U. S. 1, 24 L. Ed. 708; *Telegraph Co.* v. *Texas,* 105 U. S. 460, 26 L. Ed. 1067.)

That the state may not tax the right to carry on interstate [2] commerce or to conduct the business of the government is too well settled to be open to argument. (*Telegraph Co.* v. *Texas,* above; *California* v. *Pacific Railroad Co.*, 127 U. S. 1, 8 Sup. Ct. 1073, 32 L. Ed. 150; *Philadelphia & So. Mail S. S. Co.* v. *Pennsylvania,* 122 U. S. 326, 7 Sup. Ct. 1118, 30 L. Ed. 1200.)

The business of this company consists in transmitting three distinct classes of messages: (1) Interstate private messages; (2) intrastate private messages; and (3) government messages, interstate and intrastate. It is suggested by the attorney general that it will not be presumed that the assessor attempted to assess the right to do interstate or governmental business, but rather the presumption should be indulged that he intended to assess only the right of the company to do purely local or intrastate private business. If we had before us only the entry on the assessment-roll as indicated above, we might feel somewhat uncertain; but in the agreed statement we are told that the assessment of $2,000 on *"franchise"* "represented the valuation by said assessor upon the right or privilege of carrying on the said telegraph business within the said county of Silver Bow." The words "said telegraph business" refer back to the description of the business of the defendant company as given in paragraph 1 of the agreed statement, to-wit: "That for more than

twenty-five years last past said defendant has been and is doing what is commonly called a general telegraph business in all the states and territories of the United States, and among others, particularly the state of Montana and especially the county of Silver Bow therein, and transmitting on its said lines and in the course of the conduct of said business telegraph messages for the public generally as well as those sent from point to point within said state of Montana as those from points without to points within, and from points within to points without said last-named state''; and the further description of the business contained in paragraph 4 of the agreed statement, to-wit: ''That all of the telegraph lines of said defendant corporation within the territory that is now included in the state of Montana were constructed and ever since have been maintained and operated by said defendant under and pursuant to the provisions of the said Act of Congress above set forth, and defendant has at all times since said construction and during such maintenance and operation transmitted telegraph messages between the several departments of the governments of the United States and their officers and agents for the government of the United States and relating to the civil, military, postal, and general administration thereof, all as in said Act provided.''

The right to carry on *the telegraph business,* then, includes any and all of the business. The words ''within the said county of Silver Bow'' must refer to business originating or terminating in, or passing through, the offices in Silver Bow county. They cannot be construed to refer to business conducted wholly between points within that county, but even if they did they would still include governmental messages; and, as thus construed, they indicate that the assessor was attempting to fix a valuation on the right or privilege of the company to transact any business [3] whatever within Silver Bow county, and having made his assessment in a lump sum, and not having fixed a separate valuation upon the right of the company to do intrastate private business only, the entire assessment on the franchise becomes void and the tax illegal.

In considering a like question, the supreme court in *California* v. *Pacific R. R. Co.*, above, said: "It follows that, in each one of the cases now before us, the assessment made by the state board of equalization comprised the value of franchises or property which the board was prohibited by the Constitution of the state or of the United States from including therein; and that these values are so blended with the other items of which the assessment is composed that they cannot be separated therefrom. The assessments are, therefore, void."

It is not necessary to determine whether the state may lawfully tax the franchise of this company or its right to transact intrastate private business only, but that such right exists appears [4] to be recognized by expressions found in each of the following cases: *Telegraph Co.* v. *Texas*, above; *Ratterman* v. *Western Union Tel. Co.*, 127 U. S. 411, 8 Sup. Ct. 1127, 32 L. Ed. 229; *Leloup* v. *Port of Mobile*, 127 U. S. 640, 8 Sup. Ct. 1383, 32 L. Ed. 311; *Osborne* v. *Florida*, 164 U. S. 650, 17 Sup. Ct. 214, 41 L. Ed. 586. For the reason given, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.