[S. F. No. 11956.   In Bank.—February 19, 1927.]

POSTAL TELEGRAPH–CABLE COMPANY, a Corporation, Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] TELEGRAPH COMPANIES — FEDERAL FRANCHISE — ACT OF 1866.— Under the act of Congress passed July 24, 1866, to "Aid in the construction of telegraph lines," etc. (14 Stats. at Large, 221, c. 230; Rev. Stats., secs. 5263–5268), where a telegraph company files its written acceptance of the restrictions and obligations of the statute, the rights and privileges conferred upon the company thereunder constitute a federal franchise and the company has the right to construct, maintain, and operate its lines over and along the public roads and highways of the United States, while kept up and maintained as such, irrespective of whether mail is actually being carried thereon, either by way of city letter-carriers or in rural delivery.

[2] ID.—AUTHORITY OF CONGRESS—AUTHORITY OF STATE.—As Congress has authority to say that a telegraph company may construct and operate its telegraph over public roads and highways of the United States, a state has no authority to say it shall not be done, and cannot, by a specific statute, prevent the company from placing its lines along the post-roads, or stop the use of them after they are placed there.

[3] ID.—GOVERNMENTAL FUNCTION.—By said act of Congress, and its acceptance by a telegraph company, the latter becomes an instrumentality of the United States in carrying out its governmental functions, and an agency of the federal government for the transaction of its postal business, and an agent of interstate and foreign commerce.

[4] ID.—RIGHT OF STATE TO REGULATE TELEGRAPH COMPANIES.—The state and its municipalities have the right to impose upon a telegraph company, under the police power, reasonable regulations with reference to the manner of the exercise by it of the rights conferred by the national government, but these powers are regulatory, and not prohibitory; and the state cannot so interfere with its operation, even under the assumed guise of the exercise of the

1. Scope and effect of act of Congress of July 24, 1866, as to power of telegraph company to construct lines upon proper roads, note, 1 Ann. Cas. 533.  See, also, 26 R. C. L. 500; 24 Cal. Jur. 475.

2. See 26 R. C. L. 499.

3. See 24 Cal. Jur. 475.

4. See 24 Cal. Jur. 476.

police power, as to work a prohibition of any part of its business; and the regulations of the state must not be arbitrary, unreasonable, nor such as have the effect of excluding the company from the state or forbidding it to carry on its business therein.

[5] ID.—AUTHORITY OF FEDERAL FRANCHISE—UNITED STATES CONSTITUTION.—The authority for a "federal franchise" possessed by a telegraph company which has accepted the provisions of the act of Congress of July 24, 1866, to "Aid in the construction of telegraph lines," etc., is the provision of the United States constitution giving Congress the power to establish postoffices and post-roads; and under this provision the power of the national government is exclusive, subject to the right of the state, under its police power, to make certain reasonable regulations as to the manner in which the business of the telegraph company shall be conducted.

[6] ID.—ORDER OF RAILROAD COMMISSION—SUSPENSION OF POWER OF TELEGRAPH COMPANY.—An order of the Railroad Commission that a telegraph company, which has accepted the provisions of the act of Congress of July 24, 1866, and which is maintaining an interstate telegraph business, cease and desist from the operation of its line for intrastate business unless and until it shall have secured a certificate from the Commission that the present and future public convenience and necessity require, or will require, such operation, does not find support in the exercise of the police power of the state to regulate, but amounts to an attempt to exercise a power to prohibit, which violates the company's rights under the federal constitution and said act of Congress.

[7] ID.—HIGHWAYS OF STATE — RIGHT OF TELEGRAPH COMPANY TO USE—SECTION 536, CIVIL CODE.—The rights acquired by a telegraph company, by accepting and availing itself of the provisions of section 536 of the Civil Code, are vested rights which the constitutions, both state and federal, protect; and they cannot be taken away by the state, even though the legislature should repeal the section, or by the people through a constitutional provision.

[8] ID.—ACCEPTANCE OF STATE'S FRANCHISE.—The finding of the Railroad Commission of the physical fact that a telegraph company is maintaining and operating its lines of telegraph over the roads and highways of the state establishes, as a matter of law and of fact, the proposition that it has accepted and owns a state franchise for that purpose, which was offered to it by section 536 of the Civil Code.

[9] ID.—CONSTRUCTION OF NEW LINES—PUBLIC UTILITIES ACT—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY.—The constitutional amendments of 1911 and the "Public Utilities Act" of 1911 cannot be held to have required a telegraph company, which had prior to the passage of said measures accepted the pro-

visions of section 536 of the Civil Code, to procure a certificate
of public convenience and necessity from the Railroad Commission
for the construction of new lines.

(1) 31 **Cyc.**, p. 974, n. 1; 37 **Cyc.**, p. 1623, n. 94, 4.   (2) 37 **Cyc.**,
p. 1623, n. 3, p. 1625, n. 19.   (3) 37 **Cyc.**, p. 1625, n. 19 New.
(4) 12 **C. J.**, p. 48, n. 44, p. 49, n. 45; 37 **Cyc.**, p. 1629, n. 66,
p. 1630, n. 72, 73, 74, 75. · (5) 12 **C. J.**, p. 78, n. 24, 27.   (6) 37
**Cyc.**, p. 1630, n. 74.   (7) 12 **C. J.**, p. 969, n. 35; 37 **Cyc.**, p. 1614,
n. 79.   (8) 37 **Cyc.**, p. 1613, n. 78.   (9) 12 **C. J.**, p. 969, n. 38: 37
**Cyc.**, p. 1614, n. 79.

APPLICATION for a Writ of Certiorari to review an
order of the Railroad Commission requiring the procure-
ment of a certificate of public convenience and necessity for
the construction of a telegraph line.   Order annulled.

The facts are stated in the opinion of the court.

Willard P. Smith and Max Thelen for Petitioner.

Carl I. Wheat, Arthur T. George and Reginald L. Vaughan
for Respondents.

WASTE, C. J.—The petitioner, Postal Telegraph-Cable
Company, constructed a line from Niland, through Brawley,
Imperial, and El Centro, to Calexico, known as its Imperial
Valley extension, and opened offices in the places mentioned
for the transaction of a general telegraph business.   The
respondent Railroad Commission, of its own motion, and
assuming to act under the provisions of section 50, subdi-
visions (a) and (b), of the Public Utilities Act (Stats. 1915,
p. 115; amended Stats. 1917, p. 168), instituted an investi-
gation into the construction of the line and the business
being carried on over it.   After due hearing, it made an
order that the Telegraph Company cease and desist from
the operation of the line for intrastate business unless and
until it shall have secured a certificate that the present
and future public convenience and necessity require, or
will require, such operation.   This proceeding is brought
to determine the validity of that order.

The Postal Telegraph-Cable Company, at times herein-
after referred to as the Telegraph Company, a California

200 Cal.—30

corporation, is one of several telegraph and telephone companies doing a competitive business in this state. It is part of the "Mackay System," which operates telegraph and cable companies throughout the United States and foreign countries. Its predecessors first entered California in 1886, by a telegraph line extending from the Canadian boundary south through the states of Washington and Oregon, and thereafter constructed and extended their lines generally throughout the state. In 1908 the predecessor companies conveyed all their property in California to this petitioner, and it has carried on all subsequent construction and operation in the state. Apart from the period during which the country was engaged in the World War, there has been a continual increase in the Telegraph Company's facilities, equipment, and lines in California. During 1924 a line from Los Angeles to Dallas, Texas, and running through Niland was completed. Prior to the construction of this interstate line, the petitioner's nearest point to the Imperial Valley was at Redlands, 124 miles away. The extension, which is physically connected with the line at Niland, is forty-six and a half miles in length. It is substantially constructed and, except for a distance of one and a half miles, runs along the county and state highways.

It is not now claimed by the respondent Commission that the line from Niland to Calexico was unlawfully constructed, and it is conceded that it was being lawfully operated for interstate business and the transmission of government messages. Respondent admits that neither it nor the state, whose agent it is, can demand a certificate of convenience and necessity as a prerequisite to the construction or operation of a telegraph line within the state for the doing of interstate business; and that any order of the Commission requiring such a certificate, or any statutory enactment purporting to require a certificate, would be violative of the commerce clause of the federal constitution. Respondent further concedes that the state cannot require a certificate of public convenience and necessity as a prerequisite to the construction of a line physically connected to an interstate line, even though potentially usable for intrastate purposes, for such line, regardless of where constructed, would also be potentially usable for interstate business. These con-

cessions remove from any possible application to this proceeding the provisions of section 50 (a) of the Public Utilities Act, which require certificates from the Railroad Commission in certain cases of construction by specified classes of public utilities.

But, with so much conceded, the respondent contends that as to intrastate telegraph business, authority inheres in the state to require compliance with a proper and reasonable exercise of the state's police power. It therefore invokes the provisions of section 50 (b) of the Public Utilities Act, which provides that certain named types of public utilities, including telegraph corporations, shall not exercise "any right or privilege under any franchise or permit hereafter granted, or under any franchise or permit heretofore granted but not heretofore actually exercised, or the exercise of which has been suspended for more than one year, without first having obtained from the Commission a certificate that public convenience and necessity require the exercise of such right or privilege; *provided,* that when the Commission shall find, after hearing, that a public utility has heretofore begun actual construction work and is prosecuting such work, in good faith, uninterruptedly and with reasonable diligence in proportion to the magnitude of the undertaking, under any franchise or permit heretofore granted but not heretofore actually exercised, such public utility may proceed, under such rules and regulations as the Commission may prescribe, to the completion of such work, and may, after such completion, exercise such right or privilege; and *provided, further,* that this section shall not be construed to validate any right or privilege now invalid or hereafter becoming invalid under any law of this state."

By reason of the concessions of the respondent and its present contentions, the sole issue to be considered in this proceeding may be thus stated: Can the Postal Telegraph-Cable Company, after it has lawfully constructed its line from Niland to Calexico, for the construction of which no certificate from the Railroad Commission was necessary, be forced to let the line stand idle, in so far as California intrastate business is concerned, unless and until it secures a certificate of public convenience and necessity for the trans-

action of such business? In answer to this question, the petitioner contends that the provisions of the Public Utilities Act relied on by the respondent (if applied to it) and the order of the Commission violate its rights under the federal constitution and the statutes enacted by Congress pursuant thereto. In making this contention, it relies, first, upon the fact that it is lawfully within this state and carrying on its business under a "federal franchise," from which it contends that it is beyond the power of the state to in any way interfere with its operation. **[1]** That petitioner possesses a federal franchise is beyond question. Section 8 of article I of the constitution of the United States provides: "The Congress shall have power . . . to establish Post Offices and Post Roads." By an act to "Aid in the Construction of Telegraph Lines and to Secure to the Government the Use of the Same for Postal, Military, and Other Purposes," passed July 24, 1866 (14 Stats. at Large, 221, c. 230; Rev. Stats., secs. 5263–5268), Congress provided (sec. 1) that any telegraph company then organized, or which might thereafter be organized, under the laws of any state in the Union, "shall have the right to construct, maintain and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post-roads of the United States which have been or may hereafter be declared such by Act of Congress. . . ." It is further provided in the act (sec. 2) "that telegraphic communications between the several departments of the Government of the United States and their officers and agents shall, in their transmission over the lines of any of said companies, have priority over all other business, and shall be sent at rates to be annually fixed by the Postmaster-General." Before any telegraph company may exercise any of the powers or privileges conferred by the act, such company is required (sec. 4) to file its written acceptance with the postmaster-general of the restrictions and obligations thereby imposed. Petitioner filed its written acceptance of the act with the postmaster-general on August 4, 1908, since which time it has been entitled to all the rights and privileges granted thereby. These rights and privileges constitute its federal franchise. (*Western Union Tel. Co.* v. *Hopkins,* 160 Cal. 106, 110, 113 [116 Pac.

557].)   By a subsequent act, Congress declared that all public roads and highways, while kept up and maintained as such, are post-routes.   (Act March 1, 1884, 23 Stats. at Large, 3, c. 9.)   Petitioner, therefore, has the right to construct, maintain, and operate its lines over and along the public roads and highways of the United States, while kept up and maintained as such, irrespective of whether mail is actually being carried thereon, either by way of city letter-carriers or in rural delivery.   This right cannot be denied to it.   (*Western Union Tel. Co.* v. *Hopkins, supra; Western Union Tel. Co.* v. *Lakin,* 53 Wash. 326, 335 [101 Pac. 1094, 1098]; *Town of Essex* v. *New England Tel. Co.,* 239 U. S. 313 [60 L. Ed. 301, 36 Sup. Ct. Rep. 102, see, also, Rose's U. S. Notes].)   **[2]**   As Congress has authority to say that a telegraph company may construct and operate its telegraph over these lines, the state can have no authority to say it shall not be done, and cannot, by any specific statute, prevent the company from placing its lines along the post-roads, or stop the use of them after they are placed there.   (*Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530, 548, 554 [31 L. Ed. 790, 8 Sup. Ct. Rep. 961].)

**[3]**   The decisions appear to be uniform to the effect that, by the act of Congress, and its acceptance by petitioner, the latter became an instrumentality of the United States in carrying out its governmental functions.   (*Western Union Tel. Co.* v. *Visalia,* 149 Cal. 744, 746 [87 Pac. 1023].)   Having accepted the benefits and burdens of the act, it thereby became an agency of the federal government for the transaction of its postal business, and an agent of interstate and foreign commerce.   (*State* v. *Western Union Tel. Co.,* 43 Mont. 445 [117 Pac. 93].)

**[4]**   The respondent seems to understand the petitioner as arguing that the effect of its "federal franchise" is to give it an absolute right to carry on its intrastate telegraph business, to the complete exclusion of the police power of the state.   Petitioner makes no such contention, as, indeed, it cannot.   It concedes the right of the state and its municipalities to impose upon a telegraph company, under the police power, reasonable regulations with reference to the manner of the exercise by it of the rights conferred by the

national government. (*Town of Essex* v. *New England Tel. Co., supra; Carver* v. *State,* 11 Ga. App. 22 [74 S. E. 556]; *Western Union Tel. Co.* v. *Lakin, supra.*) These powers are, however, regulatory, and not prohibitory, and this distinction renders tenable the contention petitioner is here making that the state cannot so interfere with its operation, even under the assumed guise of the exercise of the police power, as to work a prohibition of any part of its business. In *Western Union Tel. Co.* v. *Lakin, supra,* the court said: "The power of the city was limited to its right to regulate the use of the privilege granted by Congress. . . . Beyond this it had no power to go." Regulations of the state must not be arbitrary, unreasonable, nor such as have the effect of excluding the company from the state or forbidding it to carry on its business therein. A state cannot so exclude or prohibit either directly or indirectly. In *Western Union Tel. Co.* v. *Superior Court of Sacramento County,* 15 Cal. App. 679, 688 [115 Pac. 1091, 115 Pac. 1100], it was said that, notwithstanding the fact that the state has no power under the indicated circumstances to exclude such telegraph corporations from the right or privilege of carrying on the business for which they are formed within its borders, it may impose upon such corporations, "as it may upon all corporations of whatever kind or nature, organized and existing under the laws of another state, reasonable regulations, and to that end prescribe and require certain reasonable prerequisites to the exercise of the authority conferred on them by Congress to do business in such state," with the limitation, of course, that "no state will be permitted, whether under the guise of regulation or otherwise, to enact any legislation the effect of which would or might, practically, be to prevent them from doing business in such state, or in effect result in an attempt on the part of such state to regulate commercial intercourse between its citizens and those of other states, or to control the transmission of all telegraphic correspondence within its own jurisdiction."

When the act of Congress granting telegraph companies the right to construct, maintain, and operate their lines over the public domain (July 24, 1866, *supra*) first came before the supreme court of the United States, it was carefully

examined by it in order to determine whether or not Congress had power to prevent the states from placing obstructions in the way of the usefulness of the telegraph. It was decided that the statute was a proper exercise of the power of Congress over interstate commerce, and the power to establish postoffices and post-roads, and that "the statute, in effect, amounts to a prohibition of all state monopolies in this particular. It substantially declares, in the interest of commerce and the convenient transmission of intelligence from place to place by the government of the United States and its citizens, that the erection of telegraph lines shall, so far as state interference is concerned, be free to all who will submit to the conditions imposed by Congress, and that corporations organized under the laws of one state for constructing and operating telegraph lines shall not be excluded by another from prosecuting their business within its jurisdiction." (*Pensacola Tel. Co.* v. *Western Union Tel. Co.,* 96 U. S. 1, 11 [24 L. Ed. 708].) A statute of the state of Florida, which purported to grant a monopoly to a particular telegraph company in certain state territory, to the exclusion of all other telegraph companies, was held unconstitutional as to those telegraph corporations which had accepted the act of Congress of July 24, 1866, for the reason that it interfered with interstate commerce and with the transmission of intelligence from place to place by the government. The opinion of the court in the Pensacola case was cited in a comparatively recent decision of the same court as establishing beyond question the validity, and pointing out the general purposes of the act of 1866, and it was held that a state has no authority to say that a telegraph company may not operate lines constructed over postal routes within its borders. (*Town of Essex* v. *New England Tel. Co., supra,* p. 320.)

[5] We take it to be, therefore, conclusively settled that the authority for the "federal franchise" possessed by the petitioner is the provision of the United States constitution, *supra,* that "the Congress shall have power . . . to establish Post Offices and Post Roads." Under this provision, the authorities seem to as conclusively establish that the power of the national government is exclusive, subject to the right of the state, under its police power, to make cer-

tain reasonable regulations as to the manner in which the business of the telegraph company shall be conducted. [6] The order here sought to be annulled amounts to an injunction entirely suspending the doing of intrastate business over the Imperial Valley extension of the Telegraph Company's line. It does not, therefore, find support in the exercise of the police power to regulate, but amounts to an attempt to exercise a power to prohibit. For this reason, the order of the Commission and the provisions of section 50 (b) of the Public Utilities Act, if applied to the petitioner here, violate petitioner's rights under the federal constitution and the act of Congress which give effect to its provisions relating to postoffices and post-roads. (*Western Union Tel. Co.* v. *Massachusetts, supra,* p. 554.)

[7] For another reason the respondent may not now demand the certificate of public convenience and necessity from petitioner before it can carry on its intrastate business. Section 536 of the Civil Code provides: "Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this state, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters." This section constitutes a grant of a franchise which the state offered, and petitioner accepted by the construction of its lines. The rights acquired by the Telegraph Company, by accepting and availing itself of the provisions of the section, are vested rights which the constitutions, both state and federal, protect. They cannot be taken away by the state, even though the legislature should repeal the section, or by the people through a constitutional provision. (*Western Union Tel. Co.* v. *Hopkins, supra,* p. 119 et seq.; *Postal-Telegraph-Cable Co.* v. *Los Angeles,* 160 Cal. 129, 131 [116 Pac. 566]; *In re Keppelmann,* 166 Cal. 770, 773 [138 Pac. 346].) [8] The finding of the respondent Commission of the physical fact that petitioner was maintaining and operating its lines of telegraph over the roads and highways of the state establishes, as a matter of law and of fact, the proposition that

it has accepted and owns a state franchise for that purpose, which was offered to it by section 536, *supra.* (*Postal-Telegraph-Cable Co.* v. *Los Angeles,* 164 Cal. 156–160 [128 Pac. 19].)

[9] Respondent takes the position that, conceding that it may have been true when section 536 was enacted that the right to operate telegraph lines was implied as a necessary adjunct to the right to construct, the situation was changed by the adoption, in 1911, of amendments to the state constitution, and the enactment by the legislature of the "Public Utilities Act," which went into effect March 23, 1912 (Stats. 1911, Extra Session, pp. 18, 43), and which expressly added (sec. 50 [b]) a new requirement, i. e., a certificate of public convenience and necessity from the Railroad Commission as a condition precedent to the exercise by the public utility of its franchise rights. This statute, it admits, did not prevent the continuation of public utility facilities already in operation, without a certificate; but it contends that the continuing right to construct telegraph lines offered by the state, under section 536, did not give the petitioner an unexpressed, but nevertheless vested, right to operate new lines constructed after the Public Utilities Act went into effect. We cannot agree with this contention. Neither the constitutional amendments nor the passage of the Public Utilities Act worked the change contended for by the respondent. In view of the nature of the business of the Telegraph Company, and the broad and unrestricted terms of the offer contained in section 536, which has not been withdrawn or modified, we find no ground for the contention that each act of constructing a telegraph line, or an extension of service, was to constitute an acceptance *pro tanto.* The offer was intended to be, and was, accepted in its entirety as made. Petitioner has now exactly the same rights under its state franchise that it has had from the time it constructed and began to maintain and operate its first telegraph line within the borders of the state. The grant, resulting from the acceptance of the state offer, constituted a contract between the Telegraph Company and the state, secured by the constitution of the United States against impairment by any state legislation. (*Western Union Tel. Co.* v. *Hopkins, supra,* p. 120;

*Sunset Tel. & Tel. Co.* v. *Pomona*, 172 Fed. 829, 837; *Russell* v. *Sebastian*, 233 U. S. 195, 204–208 [Ann. Cas. 1914C, 1282, L. R. A. 1918E, 882, 58 L. Ed. 912, 34 Sup. Ct. Rep. 517]; *State ex rel. Shaver* v. *Iowa Telephone Co.*, 175 Iowa, 607, 616 [Ann. Cas. 1917E, 539, 154 N. W. 678].)

The conclusion we have reached renders it unnecessary to consider the other points made by the petitioner.

The order is annulled.

Shenk, J., Richards, J., Preston, J., Curtis, J., Langdon, J., and Seawell J., concurred.