[Civ. No. 3759. First Appellate District, Division One.—June 14, 1921.]

POSTAL TELEGRAPH–CABLE COMPANY (a Corporation), Respondent, v. CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), Appellant.

[1] MUNICIPAL CORPORATIONS — EXTENSION OF MUNICIPAL RAILWAY SYSTEM—ACTS DONE IN PROPRIETARY CAPACITY.—A municipality, in proposing to construct an extension of a street railway system owned and operated by it, and in threatening to proceed with such extension with the imminent consequence of the destruction of the manholes which constitute the means of access to the underground

conduits of a telegraph corporation, unless the latter moved such manholes, is acting in a proprietary and not in a governmental capacity.

[2] ID. — USE OF STREET BY TELEGRAPH CORPORATION — NATURE OF PROPERTY RIGHT—DESTRUCTION BY CITY—CONSTITUTIONAL LIABILITY.—The acceptance and use by the telegraph corporation of the portion of the street wherein its conduits and manholes were placed, under the authority of the Post Roads Act (enacted by Congress on July 24, 1866) and under the provisions of section 536 of the Civil Code, constituted a valuable and vested right, and the property therein a valuable property, which the municipality, in the purely proprietary activity of constructing and maintaining a municipal railway system upon and along said street, could not interfere with or destroy without being subjected to the same rightful demand for compensation which a private corporation engaging in a like enterprise would be required to respond to under the law of eminent domain.

[3] ID.—COMPULSORY REMOVAL OF MANHOLES—LIABILITY OF CITY FOR REASONABLE COST.—The action of the municipality in entering upon the proprietary enterprise of constructing, operating, and extending a municipal railway system upon and along the street where the conduits and manholes of the telegraph corporation were placed having rendered their removal and replacement imperative, and the telegraph corporation having removed and replaced the same under protest, the municipality was bound to pay the reasonable cost of such work.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge. Affirmed.

The facts are stated in the opinion of the court.

George Lull, City Attorney, and Chas. S. Peery, Assistant City Attorney, for Appellant.

Willard P. Smith for Respondent.

RICHARDS, J.—The plaintiff and respondent herein is a telegraph corporation operating under the provisions of an act of Congress enacted on July 24, 1866 [14 Stats. 221; 9 Fed. Stats. Ann., 2d ed., pp. 505–518; U. S. Comp. Stats., secs. 10072–10077], commonly known as the "Post Roads Act" and is a public utility within the meaning and effect of the Public Utilities Act of the state of California; and as such it had established, maintained,

and operated, as a part of its interstate and foreign telegraph system, wires inclosed in conduits along and beneath the surface of Market Street, in the city of San Francisco, prior to and since the years 1916 and 1917, the means of access to such conduits being certain "manholes" extending thereto from the surface of said street. At some time prior to the year 1916 the said city and county of San Francisco, the defendant and appellant herein, had constructed and was engaged in maintaining and operating a municipal street railway system upon and along certain of its streets, including a portion of Market Street east of its junction with Geary Street, and in the latter year concluded to extend its said municipal street railway system out Market Street from its said junction with Geary Street to Van Ness Avenue, and accordingly notified the plaintiff herein that it was about to construct such extension, and that in so doing its tracks were to be so located that the means of access to the plaintiff's conduits through said manholes would be destroyed, and it therefore demanded that the plaintiff proceed to move its said manholes so that the same would not interfere with the construction of the defendant's street railway tracks along the line of said proposed extension. The plaintiff at first refused to move said manholes unless the defendant would pay the cost of such removal, but the defendant refused to do this, at the same time threatening to proceed with the construction of its tracks with the resultant destruction of the plaintiff's said property. In order to prevent this result the plaintiff, under protest, removed and rearranged its manholes and approaches to its said conduits at a cost of $1,288.72, and thereafter brought this action for the recovery of said sum. Judgment was rendered in its favor therefor, and from such judgment this appeal has been taken.

[1] It may be stated at the outset that it is conceded by the appellant that the city and county of San Francisco, while engaged in the operation of its municipal street railway system, is acting in a proprietary and not in a governmental capacity. It has, in fact, been so decided in the case of *Vale* v. *Boyle*, 179 Cal. 180, [175 Pac. 787]. It is, however, contended by the appellant that while the municipality may be acting in a proprietary capacity in

the operation of its municipal street railway system, it was acting in a governmental capacity in determining that it would engage in the operation of the same and in the selection of the route or right of way over which it would operate the same; and since the interference with and threatened destruction of the plaintiff's manholes arose out of, and was incidental to, the selection by the municipality .of this particular route for the proposed extension of its already established municipal railway system, the plaintiff is without a remedy for the outlay to which it was thereby compelled.

We are unable to follow this refinement on the part of the appellant in its attempted application to the facts of the instant case. The municipality had for some considerable time prior to the date when this controversy arose been actually engaged in the operation of its municipal railway system along Market Street to its junction with Geary Street and thence out Geary Street to and along Van Ness Avenue. It proposed the further extension of its said system out Market Street to its junction with Van Ness Avenue, and was actually threatening to proceed with such extension with the imminent consequence of the destruction of the plaintiff's manholes when, in order to avoid such destruction, the plaintiff, under protest, removed and replaced the same at the cost for which this judgment was obtained. To our minds the action of the municipality thus taken and threatened was strictly within the exercise of its proprietary and not its governmental functions. We are unable to distinguish this case from the case of *Los Angeles Gas & Electric Co.* v. *Los Angeles*, 251 U. S. 32, [64 L. Ed. 121, 40 Sup. Ct. Rep. 32]. In that case it appeared that the city of Los Angeles, which for some time had been engaged in the erection, construction, and operation of a distributing system for the distribution and sale of electric energy to be used for the lighting of its streets and public places of said city and for supplying its inhabitants with electricity for illumination and other purposes for remuneration, enacted an ordinance requiring various persons, firms, and corporations then maintaining in the streets and public places of said city certain appliances for the distribution and sale of electric energy, to remove or relocate the same at the expense of the owners

thereof.   The Los Angeles Gas & Electric Company, being one of the private corporations affected by said ordinance, commenced an action to enjoin the enforcement thereof upon the ground that its enforcement entailed the taking and destruction of the plaintiff's property without compensation. Upon the trial of the cause the court held the ordinance to be void for that reason and enjoined its enforcement.   In so doing the court held that in the enactment of the ordinance in question the city of Los Angeles was acting in the exercise of proprietary rather than of police or governmental powers; and that while so acting it could not compel the removal or destruction of the plaintiff's property without compensation.   The appellant herein seeks to distinguish the case above cited from the case at bar upon the ground that in that case the city of Los Angeles was attempting to order the removal of the appliances of its competitors in the business of distributing and supplying electrical energy, while in the case at bar the city of San Francisco, in the construction of its municipal railway system along the street in question, is devoting said street to one of the primary purposes for which public streets are created and maintained, and in so doing is merely interfering with a secondary use of said street by plaintiff which must yield to its aforesaid primary use.

We fail to appreciate the force of this distinction.   [2] The plaintiff's acceptance and use of the portion of said street wherein its conduits and manholes were placed was something more than a mere privilege, revocable by the municipality at will.   The plaintiff in its occupancy of these portions of said street was acting under the authority of the act of Congress commonly known as the Post Roads Act, which entitled it to use the streets of cities for its wires and conduits, which were a necessary part of its interstate and foreign telegraph system and service.   It was also entitled to such use under the provisions of section 536 of the Civil Code of California.   The occupation and use of said street under the authority thus conferred did not, of course, give to the plaintiff the right to lay its conduits or establish and maintain their approaches in such a manner as would interfere with the normal and ordinary uses of the street for purposes of travel and traffic; but it was, nevertheless, a valuable and vested right, and

the property used therein a valuable property, which the city, in the exercise of the purely proprietary activity of constructing and maintaining a municipal railway system upon and along said street, could not interfere with or destroy without being subjected to the same rightful demand for compensation which a private corporation engaging in a like enterprise would be required to respond to under the law of eminent domain.

The case of *In re Board of Rapid Transit Commrs. of the City of New York,* 197 N. Y. 81, [90 N. E. 456], is directly in point upon this phase of the case, the question involved in that case being the right of the city of New York, in the course of the construction and operation of an underground railway along certain of its streets, to take or damage the property right or fee of abutting land owners in such streets without compensation. The court held that the use of a public street for railway purposes was not such a street or highway use for the usual and ordinary purposes for which public streets and highways are created as would justify the taking, damaging, or destruction of the property or rights of other persons in, along, or under such streets without compensation, and that the city of New York in entering upon the use of its said streets for the purposes of an underground railway was engaged in a proprietary enterprise, and was not acting in or exercising a governmental function.

We can discover no real distinction in principle between the above case and the case at bar. It is not contended that the plaintiff's conduits and established manholes and approaches thereto in any way interfered with or obstructed the ordinary uses of said street for the purposes of public travel, or that the city, in the exercise of its police power, had any such cause to order their removal or change in form or place. [3] It was only when the municipality entered upon the proprietary enterprise of constructing, operating, and extending a municipal railway system that the properties of the plaintiff, in place under its several franchises entitling it to the use of said street, were so threatened with destruction as to render their removal and replacement imperative. Under such conditions we think the municipality was bound to pay the reasonable cost to plaintiff of the compulsory removal and replacement of its said properties,

and that the judgment of the trial court awarding such compensation was correct, and should therefore be affirmed. It is so ordered.

Kerrigan, J., and Waste, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 11, 1921.

All the Justices concurred, except Angellotti, C. J., and Wilbur, J., who were absent.