197 Cal.App.2d 133 (1961)
17 Cal. Rptr. 687
THE PACIFIC TELEPHONE AND TELEGRAPH COMPANY, Plaintiff and Respondent,
v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and Appellant.
Docket No. 19538.
Court of Appeals of California, First District, Division One.
November 21, 1961.
*139 Dion R. Holm, City Attorney, George E. Baglin and Robert M. Desky, Deputy City Attorneys, for Defendant and Appellant.
Pillsbury, Madison & Sutro, John A. Sutro, Noble K. Gregory, Allan N. Littman and James F. Kirkham for Plaintiff and Respondent.
BRAY, P.J.
Defendant appeals from a declaratory judgment holding that plaintiff (1) "has a valid, subsisting and existing franchise from the State of California under Public Utilities Code Section 7901 [Civ. Code, § 536; Stats. 1905, p. 492][1] to construct and maintain telephone lines in all the streets and other public places under the jurisdiction of the City and County of San Francisco" and (2) that "Defendant cannot require plaintiff to obtain a franchise from or pay franchise compensation to defendant for the right to construct and maintain telephone lines in any of the public streets or other public places located within the corporate boundaries of the City and County of San Francisco."[2]

*140 QUESTIONS PRESENTED IN THE PRETRIAL CONFERENCE ORDER
1. Is the decision on the prior appeal (Pacific Tel. & Tel. Co. v. City & County of San Francisco (1959) 51 Cal.2d 766 [366 P.2d 514], hereinafter referred to as the prior appeal) the law of the case?
2. Was the evidence produced at the second trial substantially different from that of the first trial?
3. Was section 536 as reenacted in 1905 superseded by section 19, article XI, of the Constitution?
4. Has section 536 been nullified by the Broughton Act, the Public Utilities Act or by article XII, section 23, California Constitution?
5. Is section 536 invalid under article IV, section 31, Constitution of 1849?
6. Is section 536 not intended to apply to San Francisco, and did section 19, Political Code, preclude it from applying?

QUESTIONS NOT INCLUDED IN THE PRETRIAL CONFERENCE ORDER
7. Does the declaratory judgment authorize plaintiff to seize state property and to invade sovereignty?
8. Was certain evidence improperly rejected?
9. Do the findings support the judgment?
10. What was the effect of plaintiff's obtaining franchises from certain municipalities?
11. Are certain decisions res judicata or collateral estoppel?

RECORD
The action was brought by plaintiff to establish its right to construct and maintain telephone lines on defendant's public streets and places without obtaining a franchise therefor from defendant. This right it claims by virtue of section 536, Civil Code. At the first trial, much evidence was introduced concerning plaintiff's operation both in the city and elsewhere. Judgment went in favor of defendant. On appeal the judgment was reversed. After the remittitur went down, defendant filed an amended answer. From that amended answer the trial court struck out certain allegations and a certain alleged defense.
The pretrial conference order stated that the contentions of the parties were: (1) plaintiff contends that the decision on the prior appeal constituted the law of the case; (2) defendant contends that the facts to be developed at the second trial would be essentially different from those at the first trial and that the decision would not be the law of the case as to the *141 facts to be developed; (3) defendant contends that section 536 as reenacted in 1905 was superseded as to cities in general and San Francisco in particular in 1911 by article XI, section 19, California Constitution; (4) defendant contends that section 536 has been nullified by the Broughton Act, by the Public Utilities Act, and by article XII, section 23, California Constitution; (5) defendant contends that section 536 is invalid under the provisions of article IV, section 31, California Constitution; (6) defendant contends that section 536 was not intended to apply in San Francisco and that subdivision 6, section 19, Political Code, precluded it from having that effect.

1. Law of the Case.

At the first trial, the trial court found that the construction and maintenance of telephone and telegraph lines on the public streets and places of defendant was not a matter of statewide concern, but that such use was a municipal affair, and that defendant could exclude plaintiff from the use of its streets and places unless plaintiff obtained a franchise from the city. The opinion on the prior appeal states (p. 767): "This is the sole question for us to determine: Is the construction and maintenance of telephone lines in the streets and other public places within the city today a matter of state concern or a municipal affair under sections 6 and 8 of article XI of the state Constitution?" The court then holds (p. 768): "We are of the opinion that the construction and maintenance of telephone lines in the streets and other public places within the city is today a matter of state concern and not a municipal affair." In coming to that conclusion the court held that section 6 of article XI of the Constitution as amended in 1896, which provided that charters "`framed or adopted by authority of this Constitution, except in municipal affairs, shall be subject to and controlled by general law' (Italics added)" did not apply because the rendering by plaintiff of telephone service to the people of the city, both interstate, intrastate and city service, was not a municipal affair. The court pointed out (p. 769): "As to matters which are of state concern, however, freeholders' charter cities remained subject to and controlled by general state laws regardless of the provisions of their charters. (Cal. Const., art. XI, § 6; Civic Center Assn. v. Railroad Com., supra [175 Cal. 441 (166 P. 351)], at 445; Douglass v. City of Los Angeles, 5 Cal.2d 123, 128 [2] [53 P.2d 353].)"
*142 The court then referred to the history of section 536, saying: "Since 1850 the State of California has by statute authorized the construction and maintenance of telegraph lines in the roads, highways and other public places in this state. (Cf. County of Los Angeles v. Southern Calif. Tel. Co., 32 Cal.2d 378, 381 [1] [196 P.2d 773].) This statute was codified as section 536 of the Civil Code.
"In Western Union Tel. Co. v. Hopkins, 160 Cal. 106, 114 et seq. [116 P. 557], it was held that section 536 of the Civil Code constituted an offer by the state to telegraph corporations of a franchise to construct and maintain their lines in the highways and other public places within the state, including the streets located in freeholders' charter cities." (Pp. 769-770.) (At that time § 536 referred only to telegraph companies.) In 1905, the Legislature repealed the section, but reenacted it in identical terms except that it now included telephone corporations and telephone lines. The section read: "Telegraph or telephone corporations may construct lines of telegraph or telephone lines along and upon any public road or highway, along or across any of the waters or lands within this state, and may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road or highway or interrupt the navigation of the waters." The court points out (p. 770): "The legislative intention in reenacting this statute was to extend to telephone corporations the same offer previously made to telegraph corporations without any other change in its effect or operation. (County of Los Angeles v. Southern Calif. Tel. Co., supra [32 Cal.2d 378] at 382.)"
The court then discusses the fact that in 1912 the United States Supreme Court in City of Pomona v. Sunset Tel. & Tel. Co., 224 U.S. 330, 344 et seq. [32 S.Ct. 477, 56 L.Ed. 788], held that the legislative intention to extend the offer of a state franchise to telephone corporations had been frustrated by the Broughton Act (Stats. 1905, ch. 578, p. 777, now Pub. Util. Code, §§ 6001-6017) enacted by the Legislature at the same session at which it reenacted section 536. The United States Supreme Court held that "[u]ntil the state court shall decide otherwise," the Broughton Act must be construed as a delegation to all California cities of the power to grant franchises to California corporations, and that thereby the Legislature *143 had repealed section 536 before it could apply to telephone corporations.
However, in 1921, in County of Inyo v. Hess, 53 Cal. App. 415 [200 P. 373] (hearing denied by the Supreme Court), the District Court of Appeal did "decide otherwise" and repudiated the Pomona decision as a misconstruction of California law, holding that the Broughton Act was purely a procedural statute and did not delegate to cities or counties any substantive authority. The holding in the Inyo County case was confirmed by the Supreme Court in County of Los Angeles v. Southern Calif. Tel. Co., 32 Cal.2d 378 [196 P.2d 773].
The court on the prior appeal then said: "It is now settled that section 536 of the Civil Code constitutes `a continuing offer extended to telephone and telegraph companies ... which offer when accepted by the construction and maintenance of lines' (32 Cal.2d at 384) gives a franchise from the state to use the public highways for the prescribed purposes without the necessity for any grant by a subordinate legislative body." (P. 771.)
The court went on to hold that by the reenactment in 1905 of section 536 the Legislature intended that "the offer, like the same offer previously made to telegraph corporations (Postal Tel.-Cable Co. v. Railroad Com., 200 Cal. 463, 473 [9] [254 P. 258]), extend and be accepted in its entirety throughout the state [citations]. The offer was made for the purpose of providing the people of the state with statewide communication services" (pp. 774-775) and was a matter of state concern, notwithstanding that the regulation of telephone lines in a municipality is also of special interest to the people of the municipality.
It is clear that the decision on the prior appeal is the law of the case on three points: (1) that the construction and maintenance of telephone lines in the streets and other places within San Francisco is a matter of state concern and not a municipal affair; (2) that section 536 as amended in 1905 constituted an offer to telephone corporations of a statewide franchise to construct and maintain telephone lines upon the public streets and places of San Francisco without obtaining a franchise from the municipality, which offer was accepted by plaintiff, and that plaintiff still holds said franchise; (3) that the Broughton Act (now Pub. Util. Code, §§ 6001-6017) *144 did not repeal section 536, nor in any way frustrate its application.
[1] Defendant contends that plaintiff is estopped to rely upon the doctrine of the law of the case because (1) the trial court after the decision on appeal permitted the city to amend its answer; (2) because of plaintiff's answer to defendant's petition for rehearing in the Supreme Court.
It is doubtful if the fact that defendant amended its answer to set up contentions which it had made for the first time in its petition for rehearing in the Supreme Court could estop plaintiff from asserting the doctrine as to matters upon which the Supreme Court passed in its decision. However, we are not required to determine that matter for the reason that the pretrial conference order reserved that issue for trial.
Plaintiff replied on the merits to the city's arguments for a rehearing in the Supreme Court. That court denied the rehearing. Its decision applied is in nowise changed. We are unable to understand why replying on the merits to a petition for rehearing of a decision estops the party from relying on that decision.
We hold that the decision on the prior appeal is the law of the case as to the matters upon which the court passed. However, it is necessary for us to consider defendant's contentions upon which the court did not pass.
This brings us to defendant's second contention as stated in the pretrial conference order.
2. Was the Evidence Received Substantially Different From That of the First Trial? No.
It is unnecessary to detail the evidence at the second trial. Suffice it to say that the identical facts set forth in the opinion on the prior appeal, pages 771-775, were proved, plus many additional facts supporting the finding in that opinion that "The telephone company, directly or by connecting with the other 49 telephone companies operating in California, makes instantaneous communication available to all the people of the state" (p. 771) and that "because of the interest of the people throughout the state in the existence of telephone lines in the streets in the city, the right and obligation to construct and maintain telephone lines has become a matter of state concern." (P. 774.) The fact that a larger percentage of the calls originating in the San Francisco exchange ended in the San Francisco exchange, making the matter as stated in *145 the opinion "`... of special interest to the people of a municipality'" (p. 775) does not prevent it from being a matter of state concern. Probably a comparative per cent of the motor vehicles using the streets of a municipality use it for in-city traffic only, yet it is well settled that the regulation of traffic on the public streets is a matter of state concern. (See Ex parte Daniels, 183 Cal. 636, 639 [192 P. 442, 21 A.L.R. 1172].)
[2] While at the first trial the exact percentages of intercity, interstate and intrastate calls originating in the San Francisco exchange were not in evidence as they were at the second trial, the Supreme Court necessarily had in mind the great difference in number of local as compared to outside calls, for it discusses Sunset Tel. & Tel. Co. v. City of Pasadena, 161 Cal. 265, 276 [118 P. 796], which stated: "While the telephone is also used for long distance communication, its most common use is for communication among the people of a particular city or town." Moreover, it is a matter of common knowledge that the bulk of calls originating in any municipal exchange is local calls. The presentation at this trial of the exact percentages of calls in San Francisco, as said in the opinion of the former appeal, "because of the interest of the people throughout the state in the existence of telephone lines in the streets in the city, the right and obligation to construct and maintain telephone lines has become a matter of state concern" (p. 774; emphasis added), does not constitute such "a different state of facts" as to make the former determination not the law of the case. (See 4 Cal.Jur. 2d § 688, p. 594.)
[3] Defendant contends that plaintiff had the burden of proving that the construction and maintenance of its poles and lines in San Francisco streets did not "incommode" the public use thereof. Section 536 provided that telephone companies "may erect poles, posts, piers, or abutments for supporting the insulators, wires, and other necessary fixtures of their lines, in such manner and at such points as not to incommode the public use of the road ..." (Emphasis added.) Defendant contends that the use of the streets by the telephone company "incommodes" the public use; hence the company cannot claim a franchise under section 536, and that there is no inhibition of the right of the city to grant a franchise which permits such incommodity.
*146 The opinion on the prior appeal points out that "the city controls the particular location of and manner in which all public utility facilities, including telephone lines, are constructed in the streets and other places under the city's jurisdiction." (P. 773.) The opinion then points out the requirement of obtaining a permit from the city, making a deposit, etc., and the fact that in 1957 the defendant had obtained 65 permits for the installation of poles and 946 excavation permits, after making the necessary application, paying the required fees, and repaving the streets after the excavations had been completed. "The telephone company concedes the existence of power in the city to exact these requirements." (P. 774.)[3]
Defendant's interpretation of section 536 is too restrictive. Obviously, the Legislature in adopting section 536 knew that the placing of poles, etc., in a street would of necessity constitute some incommodity to the public use, but the restriction necessarily is limited to an unreasonable obstruction of the public use.
In Western Union Tel. Co. v. City of Visalia (1906) 149 Cal. 744, 750, 751 [87 P. 1023], the court points out that the restriction in section 536 means that a telegraph company (and obviously, also a telephone company) cannot maintain its poles and wires in such a manner as to "unreasonably obstruct and interfere with ordinary travel" and that the city has authority to so regulate the placing and maintaining of the wires and poles as to prevent "unreasonable obstruction of travel."
It is absurd to contend that the installation of telephone poles and lines, under the control by the city of their location and manner of construction, is such an "incommodation" as to make section 536 inapplicable. Such a construction of that section would make it completely inoperable.
[4] Then we come to defendant's contention that the franchise granted by section 536 does not include the placing of telephone wires under ground.[4] This contention is answered by Postal Tel.-Cable Co. v. City & County of San Francisco *147 (1921) 53 Cal. App. 188, 192 [199 P. 1108], where the court held that the underground conduit of that company was constructed and maintained in the streets of San Francisco pursuant to section 536. In our case the trial court held that wires, cables, manholes, conduit and other facilities "are necessary for the construction and maintenance of telephone lines in the streets within the City."
A sensible interpretation of section 536 is that it grants a franchise to telephone companies to construct and maintain in city streets the necessary equipment to enable the company to operate its business of providing communication for the people of the cities, the state, the nation and even foreign countries. The mere fact that in 1905 modern facilities were not in existence, should not prevent their use today, nor require an interpretation of the section which would require a telephone company to obtain an additional franchise therefor. As said in the opinion on the prior appeal concerning the concept of a "municipal affair," the facilities by which a telephone company operates its lines of communication are neither static nor fixed quantities "but may fluctuate with changing conditions" and what may have been proper facilities a half century ago are not necessarily ones today. (P. 775.) Because of its franchise, defendant is required to use the streets and other public places of San Francisco and other cities, and the people expect it to use the most modern equipment. As defendant points out in its opening brief, "because of the great mass of telephone wires in cities, aerial construction would border on the absurd ..."
As the trial court stated, the right to make an excavation for the purpose of installing its conduits is subject to the requirement (as in the case of installing poles) of obtaining a permit for such excavation from the city, following the prescribed procedure. Defendant's contention that such an excavation "incommodes" the use by the public of the streets and public places and hence is denied by section 536 has no more basis than the similar contention made concerning the construction and maintenance of poles, hereinbefore discussed.
[5] Defendant contends (1) that section 536, because it used the language "any public road or highway" and did not mention "streets," applied only to unincorporated areas, and (2) that the section granted some "limited privilege which natural persons possess without incorporating." These contentions are contrary to every decision of the Supreme *148 Court which has passed upon section 536. We mention only Postal Tel.-Cable Co. v. City of Los Angeles (1912) 164 Cal. 156 [128 P. 19]; County of Los Angeles v. Southern Calif. Tel. Co. (1948) 32 Cal.2d 378 [196 P.2d 773]; Western Union Tel. Co. v. City of Visalia, supra, 149 Cal. 744. The decision on the former appeal, although it does not discuss directly these contentions, is inherently a denial of their merit.
3. Is Section 536 Superseded? No.
[6] Defendant contends that section 536 has been superseded by the 1911 amendment of section 19 of article XI of the Constitution. That section, after providing that any municipality may establish and operate public utilities including telephone service, states: "Persons or corporations may establish and operate works for supplying the inhabitants with such services upon such conditions and under such regulations as the municipality may prescribe under its organic law, on condition that the municipal government shall have the right to regulate the charges thereof." It is this provision which defendant contends repeals, or makes inoperative, section 536.
In Pacific Tel. & Tel. Co. v. City of Los Angeles (1955) 44 Cal.2d 272 [282 P.2d 36], the court rejected the city's contention that section 19 conferred upon that city the power to grant franchises (incidentally the word "franchise" is not mentioned in § 19) to engage in the telephone business. The court held: "The section provides that a city `may establish and operate public works for supplying its inhabitants with ... telephone service or other means of communication ...' and that persons or corporations may do the same upon `such conditions and under such regulations as the municipality may prescribe under its organic law ...' There is nothing in this provision which is inconsistent with the established rule that the right to exist as a telephone corporation and conduct a telephone business is a matter of statewide concern and not a municipal affair." (P. 281; emphasis added.) It is significant that in 1914 the people rejected a proposed amendment to section 19 which would have authorized cities "to grant franchises to ... private corporations to establish, equip, maintain and operate public utilities ..." (Stats. 1913, p. 1707.) Section 19 provides only for "conditions" and "regulations." In the opinion on the prior appeal, the court held that a municipality could not require a franchise from it but could control "the particular location *149 of and manner in which ... telephone lines, are constructed in the streets ..." (P. 773.)
Prior to 1911 section 19 provided that the constitutional franchise offered to water, gas and electric companies, was subject to "such general regulations as the municipality may prescribe for damages ..." In re Johnston (1902) 137 Cal. 115, 120 [69 P. 973], interpreted this provision to restrict the power of municipalities to regulate the particular location and manner of installation of water, gas and electric facilities in the streets. The statement to voters who adopted the 1911 amendment pointed out that the Johnston case held, in effect, that the designation in section 19 of "damages and indemnity for damages" placed a "limitation upon the authority of the municipality over the matter" and "is a prohibition from prescribing any other regulations connected with the exercise of the privilege." The 1911 amendment gave municipalities the same control over the manner of installing "telephone service or other means of communication" that they had over the other previously expressed utility facilities. The statement to voters laid stress upon this being the purpose of the amendment. No hint was given that it might be intended to repeal or affect section 536. Nor does it.

4. Has Section 536 Been Nullified?

[7] Defendant's contention that the Broughton Act (Stats. 1905, p. 777, now Pub. Util. Code, §§ 6001-6017) repealed section 536 is flatly answered in the opinion on the former appeal, where the Supreme Court pointed out that in County of Los Angeles v. Southern Calif. Tel. Co., supra, 32 Cal.2d 378, 381, it had confirmed the holding of the District Court of Appeal in County of Inyo v. Hess, supra, 53 Cal. App. 415, that the Broughton Act did not authorize subordinate legislative bodies to grant franchises but merely provided a procedure to be followed where such bodies had been otherwise empowered to do so. (See further discussion of the Broughton Act, supra, under the heading "Law of the Case.")
[8] Defendant contends that the holding in Oro Elec. Corp. v. Railroad Commission, 169 Cal. 466 [147 P. 118], that section 19, article XI of the Constitution "does not, ex proprio vigore, give to all cities the power to regulate public utilities operating within their borders; it merely places the utilities under such control as may be provided for by the charter or other organic law of the city" (p. 482) constitutes a determination *150 that the cities have the power to grant telephone franchises. However, as said in People v. Willert (1939) 37 Cal. App.2d Supp. 729, 734 [93 P.2d 872]: "It is nevertheless true that the organic law is subject to and controlled by conflicting state legislative action unless the subject matter is a `municipal affair' as those words are used in sections 6 and 8, article XI." Telephone communication is not a municipal affair. That the decision in Oro Elec. Corp., supra, has no bearing on the subject we are considering is shown by Pacific Tel. & Tel. Co. v. City of Los Angeles, supra, 44 Cal.2d 272, 281, where the court pointed out that section 19 did not confer on cities the power to grant telephone franchises and that "the right to exist as a telephone corporation and conduct a telephone business is a matter of statewide concern and not a municipal affair." The opinion on the former appeal is to the same effect.
Defendant's next contention is that section 536 was nullified or repealed by section 23 of article XII of the Constitution, which placed public utilities under the jurisdiction of the Railroad Commission, and by sections 50 and 86, Public Utilities Act.[5]
[9] The portion of section 23 relied upon by defendant reads: "... this section shall not affect the right of any city and county or incorporated city or town to grant franchises for public utilities upon the terms and conditions and in the manner prescribed by law." In Pacific Tel. & Tel. Co. v. City of Los Angeles, supra, 44 Cal.2d 272, 280-281, it was held that this section did not confer any rights upon cities. As hereinbefore pointed out, a city has no power to grant franchises in a matter of state concern.
[10] Defendant's contention that sections 50 and 86 of the Public Utilities Act of 1915 (Stats. 1915, pp. 148-149 and 169 respectively) which deal with the necessity of a public utility's obtaining from the Railroad Commission (now the Public Utilities Commission) a certificate of public convenience and necessity nullifies section 536, is directly contrary to the holding in the above mentioned City of Los Angeles case, where after stating that the offer of a franchise contained in section 536 "is accepted in its entirety by the construction, maintenance and operation of telegraph or telephone lines within the state," the court said: "The privileges ... must, *151 of course, be exercised in accordance with the authority vested in the Public Utilities Commission by section 23 of article XII of the state Constitution and the statutes enacted pursuant thereto." (P. 276; emphasis added.)

5. Article IV, Section 31, Constitution.

By an involved argument that because the doctrine of the Dartmouth College case (Dartmouth College v. Woodward (1819) 17 U.S. (4 Wheat.) 250 [4 L.Ed. 629]) that the grant of a corporate charter was a contract which could not be altered, amended or repealed by the state Legislature, has been repudiated in California by the people and the Legislature (a conceded fact), defendant contends that section 31, article IV, of the Constitution of 1849, which provided, in effect, that laws concerning the formation of corporations may be altered from time to time or repealed, makes section 536 invalid. Just how section 31 accomplishes this result does not appear. That section 536 is not invalid under section 31, article IV, of the Constitution of 1849, is hereafter discussed under "8. Rejection of Evidence."
6. Does Section 536 Apply to San Francisco? Yes.
In City of Petaluma v. Pacific Tel. & Tel. Co. (1955) 44 Cal.2d 284, 288 [282 P.2d 43], the court held: "The words `along and upon any public road or highway' in section 536 as originally enacted were intended to mean all public highways in the state, including city streets. (Western Union Tel. Co. v. Hopkins, 160 Cal. 106, 118-119 [116 P. 557]) ..." (Emphasis added.) Moreover, the opinion on the prior appeal so holds, as we have hereinbefore shown.
[11] Section 19 of the Political Code provided: "Nothing in either of the four Codes affects any of the provisions of the following statutes, but such statutes are recognized as continuing in force ... 1. All Acts incorporating or chartering municipal corporations, and Acts amending or supplementing such Acts; 2. All Acts consolidating cities and counties, and Acts amending or supplementing such Acts ..." Apparently it is defendant's contention that this section, prior to its repeal (Stats. 1951, p. 1864) made the 1872 provisions of section 536 subordinate to the Consolidation Act of 1856 (Stats. 1856, p. 145) which act was the city's charter in 1872.
We see no inconsistency between section 536 and the Consolidation Act. There was no provision in the latter act authorizing *152 San Francisco to grant franchises for telegraph companies (nor for telephone companies which at that time were not mentioned in § 536). In providing a procedure under which ordinances may be adopted by the board of supervisors for the granting of any privilege, etc., the Legislature does not thereby grant power to the board of supervisors to grant franchises for telegraph and telephone companies. Moreover, the Constitution of 1879, passed subsequently to the adoption of section 19, provided that all cities (San Francisco included) are "subject to and controlled by general laws." (Art. XI, § 6.) Again, as we have hereinbefore pointed out, in the opinion on the prior appeal the Supreme Court held that prior to 1905 section 536 constituted an offer to telegraph companies which applied to the streets and other places in all cities, and that when in 1905 the Legislature reenacted that statute for the purpose of making the same offer to telephone corporations it intended that offer to apply to the streets of all cities, including San Francisco.
[12] Defendant argues that because the city's power to regulate the manner in which a telephone company may use the city's streets derives from its "police power," the granting of a franchise is likewise within the police power of the city.
As pointed out by the United States Supreme Court in Dakota Cent. Tel. Co. v. South Dakota (1919) 250 U.S. 163, 186-187 [39 S.Ct. 507, 63 L.Ed. 910, 4 A.L.R. 1623], "police power" has two meanings, "a comprehensive one embracing in substance the whole field of state authority and the other a narrower one including only state power to deal with the health, safety and morals of the people."
Where a corporation has a state franchise to use a city's streets, the city derives its rights to regulate the particular location and manner of installation of the franchise holder's facilities from the narrower sense of the police power. Thus, because of the state concern in communications, the state has retained to itself the broader police power of granting franchises, leaving to the municipalities the narrower police power of controlling location and manner of installation. Such is the meaning of cases such as Western Union Tel. Co. v. City of Visalia, supra, 149 Cal. 744, 750-751; City of Petaluma v. Pacific Tel. & Tel. Co., supra, 44 Cal.2d 284, 287, and the opinion on the former appeal in our case.
*153 [13] Defendant contends that section 536 was repealed by the city's charters of 1900 and 1932. As partial support for its position it relies on Ex parte Braun (1903) 141 Cal. 204, 213 [74 P. 780], holding that a state law was "inapplicable" within a freeholders' charter city when the matter is a municipal affair covered by an inconsistent local regulation. The city's contention is fully answered by the determination made in the cited cases and herein, that we are dealing not with a municipal affair but with one of statewide concern.
7. Does the Judgment Authorize Seizure of State Property and Invasion of Sovereignty? No.
[14] Defendant contends that a corporation organized for profit cannot use the Declaratory Judgment Act (Code Civ. Proc., §§ 1060-1062a) to seize the state's property and invade the sovereignty, and that the judgment here does just that. Admittedly the Declaratory Judgment Act cannot be used for that purpose. However, it is difficult to see how that purpose has been achieved here. The judgment merely declares, in effect, that plaintiff has a franchise granted by the state to use the city streets, subject to the right of the city to control the location and manner of the use.
The fact that plaintiff has certain rights, of which plaintiff cannot be deprived except by an amendment to the Constitution, including rights to collect tolls and charges, to payment of just compensation for any property taken from it for public use, and the right to be taxed "in the same manner and at the same rates as mercantile, manufacturing and business corporations, and their franchises, are taxed ..." (Const., art. XIII, § 14) does not invalidate the grant of the franchise.
If the use declared to belong to plaintiff can be characterized as a seizure of state or city property or an invasion of sovereignty, such seizure and invasion are authorized by the people through the Constitution and by the Legislature. The state was acting in its sovereign capacity when it adopted section 536. (Western Union Tel. Co. v. Hopkins (1911) 160 Cal. 106, 118 [116 P. 557].) That plaintiff has the right to seek a declaratory judgment as to its rights and obligations under section 536 is determined by the opinion on the prior appeal and by Pacific Tel. & Tel. Co. v. City of Los Angeles, supra, 44 Cal.2d 272; see also Hoyt v. Board of Civil Service Commrs. (1942) 21 Cal.2d 399 [132 P.2d 804]. It must be *154 remembered, too, that the judgment here does not declare new rights. It merely declares plaintiff's rights which were already in existence by virtue of a statute  an exercise of the state's sovereign power to grant franchises.
[15] There is no basis for defendant's claim that the action was brought to, or does, adjudicate title to real property. The right granted plaintiff by section 536 to use the streets is limited to the extent necessary to furnish communication services to the public. (County of Los Angeles v. Southern Calif. Tel. Co., supra, 32 Cal.2d 378, 387.) The right is "subject to an implied obligation to relocate its facilities therein at its own expense when necessary to make way for a proper governmental use of the streets." (Southern Calif. Gas Co. v. City of Los Angeles (1958) 50 Cal.2d 713, 716 [329 P.2d 289]. Thus, plaintiff's franchise does not give it title to the streets. This determination is not contrary to Stockton Gas etc. Co. v. County of San Joaquin (1905) 148 Cal. 313 [83 P. 54, 7 Ann.Cas. 511, 5 L.R.A.N.S. 174]. There it was held that for tax purposes a franchise should be treated as an "incorporeal hereditament"  real property "in the nature of an easement ..." (P. 319; emphasis added.) That did not mean that franchises are easements. "Franchises have long been regarded in this state as a class of property separate from all other classes of property." (Roehm v. County of Orange (1948) 32 Cal.2d 280, 286 [196 P.2d 550].) The claim that the judgment "transforms the people from owners into tenants in their own streets" justifies no consideration.

8. Rejection of Evidence.

[16] The rejected evidence consisted of testimony of defendant's director of public works to the effect that the underlying fee simple ownership of 70 per cent of the city's streets is in the city; testimony of certain of plaintiff's officers as to the profits derived from tolls and charges collected in San Francisco, and defendant's charts showing plaintiff's profits in representative years. This evidence was offered on the theory that plaintiff in this action was attempting to obtain an adjudication of title to real property. As we have heretofore shown, this action was not brought for that purpose nor did the judgment make such an adjudication. Hence, the offered evidence was properly rejected as it had no place in the case.
That the holder of a franchise under section 536 would make a profit was contemplated by the Legislature. The *155 amount of that profit would be of consideration for the Public Utilities Commission in approving rates, not for the city nor the court in this case. The evidence was also offered to show that a franchise under section 536 is a gift in violation of section 31, article IV, of the Constitution. [17] That the profit made under a telephone franchise is not a gift prohibited by the Constitution was determined in County of Los Angeles v. Southern Calif. Tel. Co., supra, 32 Cal.2d 378. The court there, after holding that "the acceptance of the franchise involves an assumption of the duty to furnish proper and adequate communication service to the public" (p. 384), stated: "Since the offer of a franchise in section 536, when accepted, results in a binding agreement supported by a valid consideration, there is no gift within the meaning of the constitutional prohibition." (P. 388; emphasis added.)
[18] Defendant offered the Kingsbury Commitment executed by the American Tel. & Tel. Co. in 1913, a provision of which defendant emphasizes, to the effect that American Tel. & Tel. Co. would "arrange promptly so that all other telephone companies may secure for their subscribers toll service over the lines of the companies in the Bell System." Defendant also offered a decision of the Federal Communications Commission, the Report of the Federal Communications Commission on The Investigation of The Telephone Industry in the United States, and the decision of the Railroad Commission in Tehama County Tel. Co. v. Pacific Tel. & Tel. Co., 2 C.R.C. 104. The offer was made because "it (1) explains how California recovered its sovereign power to eliminate destructive competition between telephone companies and compel connection (in place of the existing system of duplication and competition) between the lines of different telephone companies so that the people might have statewide telephone service; and (2) shows that Civil Code § 536 is a surrender of the State's sovereignty, and that statewide telephone service was achieved in spite, not because, of Civil Code § 536." Obviously, these matters have no place in this trial. Section 536 allowed, because it did not restrict, the granting of franchises to competing telephone companies. By reason of constitutional amendment and the Railroad Commission and Public Utilities Commission Acts, that situation has been changed. Neither ground is material nor relevant to the issues before the court.
*156 [19] Nor was there any error in excluding cross-examination of plaintiff's vice president and chairman of the board concerning the Kingsbury Commitment. The purpose was to show "how California recovered its sovereign power to eliminate destructive competition between telephone companies" and that "statewide telephone service was achieved in spite, not because, of Civil Code § 536." Obviously these purposes are immaterial and irrelevant to the inquiry here. Section 536 is in nowise a grant to plaintiff of sovereignty. Defendant concedes, in fact stresses, that when section 536 was adopted it was the intent of the people and the Legislature that all franchises, and particularly those mentioned in section 536, be competitive.
[20] On cross-examination of a retired executive of plaintiff, the court erroneously ruled that defendant could not make him its own witness under section 2055, Code of Civil Procedure. Defendant then proceeded to make him its own witness but not under that section. To the question, "And then did you lease a phone instrument to the farmer to attach to the line?" plaintiff objected that it was leading. The court erroneously sustained the objection. However, no harm was done because defendant then asked him, "Were these Bell telephones?" and the witness answered that they were. Then plaintiff objected on the ground of irrelevancy and the court correctly sustained the objection. Defendant has failed to point out in what respect it was injured by being required to make the witness its witness not under section 2055, or that it did not obtain from him any relevant testimony. The matter concerning which defendant was examining the witness was apparently in connection with its claim that section 536 granted sovereignty to plaintiff, a matter of which we have already disposed.
[21] The court properly refused to admit in evidence (1) the gas franchise of Pacific Gas & Electric Co.; (2) its electric franchise; (3) the amounts of taxes paid by Pacific Gas & Electric Co. to defendant during certain years.
Section 536 applied only to telephone and telegraph franchises, and as shown, such franchises can only be granted by the state. (Television Transmission, Inc. v. Public Util. Com. (1956) 47 Cal.2d 82, 87 [301 P.2d 862].) On the other hand, the state, by general law, has expressly delegated to the cities the power to grant franchises for the construction and maintenance of gas facilities in their streets. Therefore, the *157 offered evidence was not material or relevant in this case. Defendant, by an involved reasoning which we fail to follow, contends that because gas and electric facilities installed under the Broughton Act in a city "incommode" the city's streets, section 536 never intended telephone companies to likewise "incommode" the streets.

9. The Findings Support the Judgment.

[22] Based on defendant's statement, "The law is well settled that the power to exclude lines is not the criterion of the power to grant a street use franchise; and conversely that the power to grant a street use franchise is not to be equated to the power to exclude lines" defendant selects certain findings concerning services supplied by plaintiff and the fact that such services cannot be rendered without using the streets and public places in San Francisco, and contends that these findings do not support the judgment. These, of course, are only a part of the findings. Moreover, they are almost identical with the facts which the opinion on the former appeal found. Reading the findings as a whole, it is clear that the trial court did not base its judgment that plaintiff has a franchise to use the city's streets merely on the fact that to operate it must use those streets.

10. Franchises From Municipalities.

[23] It was stipulated that plaintiff had obtained franchises from a number of California cities and one from San Francisco which has expired. Defendant contends that this is a contemporaneous construction of section 536, barring plaintiff from contending that section 536 was not repealed. These facts and defendant's contentions thereon were before the Supreme Court on the prior appeal and were among the "other contentions" which, in view of its decision, the court believed "unnecessary to discuss." (P. 777.) Even if the securing of such local franchises constitutes contemporaneous construction it is contrary to the interpretation placed on the statutes by the Supreme Court and must be disregarded. (See Adoption of Barnett (1960) 54 Cal.2d 370, 378 [6 Cal. Rptr. 562, 354 P.2d 18]; Johnston v. Board of Supervisors (1947) 31 Cal.2d 66, 74-75 [187 P.2d 686].)

11. The Named Decisions Are Not Res Judicata or Collateral Estoppel.

[24] Defendant contends that as to plaintiff, whom it claims was a real party in interest in each case, the judgments *158 in the following cases are res judicata or collateral estoppel: (1) City of Pomona v. Sunset Tel. & Tel. Co., supra, 224 U.S. 330; (2) City of San Diego v. Southern Calif. Tel. Co. (1949) 92 Cal. App.2d 793 [208 P.2d 27] (hearing denied in Supreme Court); (3) City of San Diego v. Southern etc. Tel. Corp. (1954) 42 Cal.2d 110 [266 P.2d 14].
Assuming that the judgments in the cases cited by defendant had at any time the effect that defendant claims, the decision on the former appeal (there, as we have hereinbefore pointed out, the Supreme Court discussed the Pomona case as well as the San Diego case (92 Cal. App.2d 793)) as well as changed circumstances, would make those judgments no longer effective. "What may at one time have been a matter of local concern may at a later time become a matter of state concern controlled by the general laws of the state." (Former decision, p. 771.) "Clearly, there has been a vast change in conditions ... and it is evident that telephone service is not at the present time a municipal affair but is a matter of statewide concern." (Former decision, p. 776.) [25] The doctrine is no defense where the circumstances have changed between the issue of the first judgment and its assertion as res judicata or collateral estoppel in a subsequent action. (People v. Ocean Shore Railroad (1948) 32 Cal.2d 406, 418-419 [196 P.2d 570, 6 A.L.R.2d 1179]; Hurd v. Albert (1931) 214 Cal. 15, 26 [3 P.2d 545, 76 A.L.R. 1348].) A change in the law creating an altered situation is such a change of circumstances. (State Farm Mutual Auto. Ins. Co. v. Duel (1944) 324 U.S. 154, 162 [65 S.Ct. 573, 89 L.Ed. 812].)
The judgment is affirmed.
Tobriner, J., and Sullivan, J., concurred.
A petition for a rehearing was denied December 12, 1961, and appellant's petition for a hearing by the Supreme Court was denied January 17, 1962.
NOTES
[1] The statute now appears as section 7901 of the Public Utilities Code, but it will be referred to in this opinion as section 536 of the Civil Code.
[2] Defendant seeks to convince this court by sheer weight of paper and number of contentions made, most of the latter of which are merely variations of the contentions listed in the pretrial conference order, and herein set forth. Its opening and closing briefs (exclusive of reproductions of statutes and appendices) consist of 522 pages. In addition defendant filed a "letter" of 100 pages. Contrast this cascade with plaintiff's brief of only 70 pages and its letter of 11 pages.
[3] Incidentally, the opinion points out that "the telephone company concedes that its state franchise can be taxed by the city. The record shows that it paid the city for the fiscal year 1957-1958 nearly $4,000,000 in ad valorem taxes, which payment included taxes on such franchise." (P. 774.)
[4] Defendant's electrical code prohibits the construction of poles and overhead wires in certain areas of the city.
[5] This same contention was made on the prior appeal, and is one of those which the court held "unnecessary to discuss."